**Virginia M. HANLEY et al.**

v.

**STATE of Rhode Island et al.**

**No. 2002–535–Appeal.**

Supreme Court of Rhode Island.

Dec. 19, 2003.

Michael Kiselica, Warwick, for Plaintiff.

Michael P. Jolin, Providence, for Defendant.

Present: WILLIAMS, C.J.,
FLANDERS, GOLDBERG, FLAHERTY,
and SUTTELL, JJ.

### OPINION

PER CURIAM.

In this slip-and-fall case, the plaintiffs, Virginia M. Hanley (Virginia) and her husband, Robert C. Hanley (collectively, the plaintiffs), appeal from the grant of summary judgment in favor of the defendants, the State of Rhode Island and John Does 1 through 10 (collectively, the state). Among the issues raised in the appeal is whether the so-called recreational use statute [1] grants immunity to the state when the alleged injury occurred within a state-owned public park.

On August 3, 1998, plaintiffs were camping with their daughters at Fisherman's Memorial State Park in Narragansett, Rhode Island, when they were informed that they would be required to vacate their campsite the following morning. Wishing to extend their visit, Virginia and her daughters went to the park ranger's office that evening to inquire about the availability of another campsite. As they were returning to their campsite, Virginia caught her foot on a raised edge of the asphalt road in the park and fell, injuring her arm and shoulder. Thereafter, plaintiffs filed the instant action against the state, alleging that it had "negligently and carelessly designed, constructed, repaired, or built the portion of the roadway" thereby "directly and proximately causing plaintiffs injuries." [2]

---

1. *See* G.L.1956 chapter 6 of title 32, entitled Public Use of Private Lands—Liability Limitations.

2. Robert Hanley filed suit for loss of consortium.

Thereafter, the state filed a motion for summary judgment in the Superior Court, urging that the recreational use statute granted it immunity from liability under the circumstances of this case. Following a hearing on the motion, judgment was entered in favor of the state and John Does 1–10. The plaintiffs timely appealed the judgment.

The plaintiffs contend that the summary judgment motion was not properly before the court because the state failed to raise the recreational use statute as an affirmative defense in its pleadings. Moreover, they assert that the purpose of enacting the recreational use statute was to immunize private property owners from liability when they make their lands available free of charge to the public for recreational purposes and that the hearing justice erred in extending that protection to preexisting state-owned public parks, particularly where the state negligently created the danger that caused their injuries. The plaintiffs further contend that even if the statute generally applies to public parks, it should not apply in the instant case because the fee that they paid to use the facilities constituted an exception to the statute.

 "It is well settled that this Court reviews the granting of a summary judgment motion on a *de novo* basis." *M & B Realty, Inc. v. Duval*, 767 A.2d 60, 63 (R.I.2001) (citing *Marr Scaffolding Co. v. Fairground Forms, Inc.*, 682 A.2d 455, 457 (R.I.1996)).

" 'Only when a review of the admissible evidence viewed in the light most favorable to the nonmoving party reveals no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law, will this Court uphold the trial justice's grant of summary judgment.' * * * [A] party who opposes a motion for summary judgment car-

ries the burden of proving by competent evidence the existence of a disputed material issue of fact and cannot rest on allegations or denials in the pleadings or on conclusions or legal opinions.' " *United Lending Corp. v. City of Providence*, 827 A.2d 626, 631 (R.I.2003).

The applicability of G.L.1956 chapter 6 of title 32, the so-called recreational use statute, to state-owned land is an issue of first impression in this jurisdiction. However, before we address that question, first we must dispose of plaintiffs' contention that the issue was not properly raised as an affirmative defense below.

The state filed its motion for summary judgment on March 15, 2002, maintaining that the recreational use statute granted it immunity from liability for plaintiffs' injuries. In their response on July 3, 2002, plaintiffs asserted that the state had waived this issue because it failed to specifically raise its alleged immunity under the recreational use statute as an affirmative defense in its answer to the complaint. They further argued that even if the statute had been raised, it should not apply in the present case. After reviewing the record and hearing the arguments of counsel on July 16, 2002, the hearing justice granted the state's motion for summary judgment.

 We have stated previously that "[w]e are governed by our more liberal [R]ules of [C]ivil [P]rocedure which '* * * shall be construed to secure the just, speedy, and inexpensive determination of every action.' " *Sarni v. Meloccaro*, 113 R.I. 630, 636, 324 A.2d 648, 652 (1974) (quoting Rule 1 of the Superior Court Rules of Civil Procedure). We also have recognized that, provided that a party is not deprived "of his or her right to be fairly advised of a claim or defense relied on by the adverse party[,]" the Rules of

Civil Procedure should be construed liberally. *Gross v. School Committee of Glocester*, 114 R.I. 358, 362, 333 A.2d 417, 419 (1975).

■ Rule 8(c) of the Superior Court Rules of Civil Procedure has been construed to mean that "the failure to raise an affirmative defense in a timely manner constitutes a waiver of that defense." *World–Wide Computer Resources, Inc. v. Arthur Kaufman Sales Co.*, 615 A.2d 122, 124 (R.I.1992) (*World–Wide*) (citing *La-Bounty v. LaBounty*, 497 A.2d 302, 305 (R.I.1985); *Duquette v. Godbout*, 416 A.2d 669, 670 (R.I.1980)). The rationale behind this construction is that "the special pleading of an affirmative defense protects the complaining party from unfair surprise at trial." *Id.* "[A] defense of immunity is an affirmative defense * * *." *Brunelle v. Town of South Kingstown*, 700 A.2d 1075, 1080 n. 3 (R.I.1997).

In an apparent conflict with the foregoing doctrine is our interpretation of Rule 15 of the Superior Court Rules of Civil Procedure. Rule 15 permits amendments to pleadings "to be allowed with great liberality absent a showing of extreme prejudice." *World–Wide*, 615 A.2d at 124 (citing *Mikaelian v. Drug Abuse Unit*, 501 A.2d 721, 722 (R.I.1985); *Kuczer v. City of Woonsocket*, 472 A.2d 300, 301 (R.I.1984)). "In resolving such a conflict, we must necessarily take into account such elements as the extent of prejudice, as well as the question of a defendant's knowledge of circumstances that should have alerted him or her to the existence of such a defense." *Id.*

In the instant matter, although the state did not cite to the recreational use statute in its answer to plaintiffs' complaint, it did assert immunity as an affirmative defense. Specifically, in its ninth affirmative defense, it maintained that:

"[t]o the extent that Defendant is not otherwise immune from liability, which is expressly denied, the monetary limitation on damages as set forth in Rhode Island General Laws 1956 (1985 Reenactment) § 9–31–1 *et seq.* applies to this action."

■ Keeping in mind that we should liberally construe the Rules of Civil Procedure and that we should not lightly infer any waiver of the state's immunity, and after reviewing the language of the state's ninth affirmative defense, we conclude that plaintiffs were fairly advised and protected from any possible unfair surprise at trial on the issue of the state's reliance on the general affirmative defense of immunity. Moreover, the record reveals that plaintiffs were given three month's notice of the state's specific reliance on the recreational use statute before the hearing on the summary judgment motion was conducted. Consequently, plaintiffs cannot demonstrate that they suffered any prejudice and the hearing justice did not err in finding that the state did not waive this immunity defense.

As the final arbiter of state law, we now must interpret the language of the recreational use statute to determine whether it affords immunity to state-owned public parks. We will do so on a *de novo* basis employing our familiar canons of statutory interpretation. *See Martone v. Johnston School Committee*, 824 A.2d 426, 431 (R.I. 2003).

■ "When construing a statute 'our ultimate goal is to give effect to the purpose of the act as intended by the Legislature.'" *Oliveira v. Lombardi*, 794 A.2d 453, 457 (R.I.2002) (quoting *Webster v. Perrotta*, 774 A.2d 68, 75 (R.I.2001)). "It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute

their plain and ordinary meanings." *Id.* (quoting *Accent Store Design, Inc. v. Marathon House, Inc.,* 674 A.2d 1223, 1226 (R.I.1996)). "Moreover, in interpreting a legislative enactment, it is incumbent upon us to 'determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes.'" *Id.* (quoting *Brennan v. Kirby,* 529 A.2d 633, 637 (R.I.1987)). "In so doing, '[t]his Court will not construe a statute to reach an absurd result.'" *Town of North Kingstown v. Albert,* 767 A.2d 659, 662 (R.I.2001) (quoting *State v. Flores,* 714 A.2d 581, 583 (R.I.1998) and *Kaya v. Partington,* 681 A.2d 256, 261 (R.I.1996)).

In 1978, the Legislature enacted the recreation use statute. Its stated purpose is:

> "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability to persons entering thereon for those purposes." Section 32–6–1.

At the time of its enactment, the statute did not include the state and municipalities within its definition of an owner. However, in 1996, the Legislature explicitly added the state and municipalities to that definition, and now defines an owner as: "the private owner possessor of a fee interest, or tenant, lessee, occupant, or person in control of the premises including *the state and municipalities*[.]" Section 32–6–2(3), as amended by P.L. 1996, ch. 234, § 1. (Emphasis added).

The plaintiffs ask us to hold that the hearing justice erred in interpreting the amendment as meaning that, as the owner of a public park, the state qualifies as an owner under the statute. They maintain that the statute provides immunity to the state only when it holds less than a fee interest in property *that is made available* for recreational use and that the only fee owners who actually are afforded immunity under the statute are private owners. They further contend that the statute does not apply because this particular park already was available for public use at the time the statute was enacted.

■■■■■ We disagree, and conclude that it is clear from the unambiguous language of the 1996 amendment that the legislature intended to include the state and municipalities among owners entitled to immunity under the statute, regardless of when the property was made available to the public for recreational use. It is undisputed that the park in question was open to the public for recreational purposes; consequently, we hold that the hearing justice did not err in finding that the "amendment specifically included the State and municipalities as being covered under the recreational use immunity" statute.

Having concluded that the state is entitled to immunity under the statute as the owner of a public park, we next must determine whether, under the particular circumstances of this case, the hearing justice properly granted summary judgment in its favor.

■■■■ The record reveals that the alleged injury occurred when Virginia slipped and fell on a raised edge of asphalt on the roadway in the park as she was returning to her campsite from the park ranger's office. The plaintiffs maintain that even if the statute generally extends immunity to state-owned public parks, in this case the state should be held liable because it negligently caused the defect in the roadway and thereafter failed to warn Virginia of the problem. Furthermore, they contend that the statute should apply only to circumstances "where the injured person was engaged in an activity involving a significant recreational component, or to circumstances where the injured per-

son acted with disregard for their [sic] own safety," and not to the recreational activity in this case, namely, walking. We disagree.

Section 32–6–3 of the statute provides that:

"Except as specifically recognized by or provided in § 32–6–5, an owner of land who either directly or indirectly invites or permits without charge any person to use that property for recreational purposes does not thereby:

"(1) Extend any assurance that the premises are safe for any purpose;

"(2) Confer upon that person the legal status of an invitee or licensee to whom a duty of care is owed; nor

"(3) Assume responsibility for or incur liability for any injury to any person or property caused by an act of omission of that person."

As we have stated previously, "the obvious intention of the Legislature was to treat those who use private property for recreational purposes as though they were trespassers." *Tantimonico v. Allendale Mutual Insurance Co.*, 637 A.2d 1056, 1060 (R.I.1994). The definition of recreational purposes:

"includes, but is not limited to * * * hunting, fishing, swimming, boating, camping, picnicking, hiking, horseback riding, bicycling, pleasure driving, nature study, water skiing, water sports, viewing or enjoying historical, archaeological, scenic, or scientific sites, and all other recreational purposes contemplated by this chapter * * *." Section 32–6–2(4).

However, the immunity enjoyed under the statute, is not absolute. Specifically, § 32–6–5(a) does not:

"limit in any way liability which, but for this chapter, otherwise exists:

"(1) For the willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity after discovering the user's peril[.]"

Although plaintiffs contend that the state negligently caused the defect in the roadway and had a duty to warn Virginia of that defect, at no time did they ever allege willful or malicious conduct by the state. Nor did they demonstrate any genuine issue of material fact that, after "discovering the user's peril[,]" the state willfully or maliciously failed to "guard or warn against a dangerous condition, use, structure, or activity[.]" Consequently, the hearing justice did not err in finding that the state was entitled to immunity from liability on the issue of its alleged negligence.

 The plaintiffs' contention that the statute does not apply to walking because it is a passive activity also is without merit. Indeed, it would be absurd to hold a landowner immune from liability in cases in which a user of his or her land is engaged in one of the enumerated activities but not while that user is ambulating as a necessary part of that activity. Section 32–6–2(4) lists some, but not all, of the recreational activities contemplated by the statute. Considering that this nonexclusive list also includes "all other recreational purposes contemplated by this chapter[,]" § 32–6–2(4), it should be interpreted liberally. *See Rankey v. Arlington Board of Education*, 78 Ohio App.3d 112, 603 N.E.2d 1151, 1154 (1992). That is because:

"The existence of statutory immunity does not depend upon the specific activity pursued by the plaintiff at the time of the plaintiff's injury. Rather, *the inquiry should focus on the nature and scope of activity for which the premises are held open to the public.* The goal is to determine the character of the premises. *If the premises qualify as being open to*

*the public for recreational activity, the statute does not require a distinction to be made between plaintiffs depending upon the activity in which each was engaged at the time of the injury." Id.* (quoting *Miller v. Dayton,* 42 Ohio St.3d 113, 537 N.E.2d 1294, 1296–97 (1989)).

In *Rankey,* "[t]he fact that [plaintiff] was at [an] event as an observer, as opposed to an active participant, [was] inconsequential" to her status as a recreational user when she was struck by a ball while walking across a field on the way to observe a softball game. *Rankey,* 603 N.E.2d at 1154. Likewise, in this case, the fact that Virginia was walking to her campsite when she tripped and fell on the road did not affect her status as a recreational user. Consequently, plaintiffs' assertion that walking is not a recreational purpose under the statute has no merit.

Finally, plaintiffs contend that there was a factual issue about whether their payment of a camping fee constituted an entrance fee and thus qualified as an exception to the limited immunity that the statute granted.

Section 32–6–5(a)(2) of the statute does not limit liability:

"For any injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof * * *."

A charge is defined as "the admission price or fee asked in return for invitation or permission to enter or go upon the land[.]" Section 32–6–2(1). "For the charge to constitute an admission fee it must be established that it is imposed in return for recreational use of the land." *Majeske v. Jekyll Island State Park Authority,* 209 Ga.App. 118, 433 S.E.2d 304, 305–06 (1993). When a charge is "levied per vehicle without regard for the number of peo-

ple inside and [where] no fee [is] charged to those [entering the land] by other means[,] * * * [then the] mere payment of a per-vehicle fee to enter and park in a recreational area does not destroy the immunity granted by the statute." *City of Louisville v. Silcox,* 977 S.W.2d 254, 256 (Ky.Ct.App.1998).

This case involves a publicly owned park and not a commercial facility. It is undisputed that the state charges camping and parking fees per vehicle entering the park regardless of the number of occupants in said vehicles. The record also reveals that it does not charge an entrance fee to recreational users who enter on foot or by bicycle. Consequently, the hearing justice did not err in finding that the camping fee that the plaintiffs paid was not an admission charge for purposes of the exception contained in § 32–6–5(2) of the statute.

Accordingly, and for the foregoing reasons, we affirm the summary judgment in favor of the state, and remand the papers in the case to the Superior Court.