**Richard P. BUCKI**

v.

**Carol J. HAWKINS et al.**

**No. 2005–199–Appeal.**

Supreme Court of Rhode Island.

Jan. 31, 2007.

Matthew P. Gabrilowitz, for Plaintiff.

Richard A. Vantienhoven, for Defendants.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

Chief Justice WILLIAMS, for the Court.

A late-night campout on waterfront property and nighttime swimming on a northern Rhode Island lake ended tragically when the plaintiff, Richard P. Bucki (plaintiff), dived off a dock into the dark water, striking his head on the sandy lake bottom. The plaintiff's resulting neck fracture prompted him to file this premises liability action against the defendant landowner, Carol J. Hawkins (defendant). After a jury ultimately awarded the plaintiff $60,300 plus interest, the trial justice granted the defendant's renewed motion for judgment as a matter of law on the basis that the defendant did not owe a duty of care to the plaintiff, and noted further that she was not liable pursuant to the protections of Rhode Island's Recreational Use Statute, G.L. 1956 chapter 6 of title 32. The plaintiff now appeals that judgment. For the reasons set forth herein, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

The defendant is the record owner of lakefront property located at 18 Wood Road on Sand Dam Reservoir in the Town of Glocester. Beginning in 1990, defendant permitted Patricia and Philip Gagnon to live year-round and rent-free on her property. In exchange, the Gagnons maintained the property, sometimes paying the property taxes and other expenses. Although defendant visited the property on many summer weekends, she was in Maine on the day of the accident.

In early August 1996, the Gagnons' adult son, Timothy Gagnon (Timothy), invited plaintiff and several friends to camp at defendant's property. Timothy informed his friends that his parents would be away the upcoming weekend. The plaintiff, accompanied by his then wife and two friends, arrived at the lake house at 11:30 p.m. on Saturday, August 10, 1996, where a campfire already was burning.

After assembling his tent, plaintiff decided to go swimming in the lake. He borrowed swim trunks from Timothy, changed in his car, and returned to the campfire. The plaintiff jogged down a floating dock attached to the property and, with his arms outstretched, he dived into the dark water, striking first his hands and then his head on the sandy lake bottom.

An ambulance took plaintiff to Rhode Island Hospital where Mark A. Palumbo, M.D. (Dr. Palumbo) surgically repaired his neck. Doctor Palumbo diagnosed plaintiff as suffering from a "traumatic cervical spinal cord injury and traumatic cervical spine fracture and ligamentous injury." Thus, Dr. Palumbo screwed a halo ring to

plaintiff's skull for traction, used stainless steel wires to reconnect plaintiff's fourth, fifth, sixth, and seventh cervical vertebrae, and secured plaintiff's spine using plates and screws. Finally, Dr. Palumbo fused plaintiff's fourth, fifth, sixth, and seventh cervical vertebrae using a bone graft from plaintiff's pelvic bone.

On July 30, 1999, plaintiff commenced suit against defendant, the Sand Dam Reservoir Association (association), Philip Gagnon, and Timothy Gagnon.[1] The plaintiff's three-count complaint alleged that defendants (1) breached their duty to warn plaintiff that it was unsafe to dive from the dock, (2) failed to maintain the premises in a reasonably safe manner, and (3) negligently supervised guests at the premises.

At trial, defendant testified that although a "No Trespassing" sign was posted on her property, she was aware that the Gagnons occasionally invited friends to the property to play horseshoes and volleyball, to swim, and to barbeque. Although she did not recall ever seeing anyone *dive* off the dock, she testified that she remembered seeing guests *jump* from the dock into the water. According to defendant, there were two unwritten rules that she believed all the Gagnons were aware of: (1) guests should not have glass beer bottles on the beach and (2) there should be no diving from the dock. Prior to the accident, however, defendant had not posted a sign or any other notice indicating that diving off the dock was prohibited.

Despite defendant's unwritten rules, plaintiff testified that no one ever advised him not to dive off the dock that evening. In fact, plaintiff testified that he had dived off the dock on three other occasions and

---

1. Although plaintiff's initial complaint named all four defendants, plaintiff voluntarily dismissed his claims against the Sand Dam Reservoir Association and Timothy Gagnon. At trial, plaintiff informed the trial justice that he would move to dismiss the case against Philip Gagnon, but no dismissal stipulation was filed with the court.

never was instructed not to do so; he also testified that he previously had witnessed other guests diving there.

The plaintiff testified that he was familiar with the water's depth from his previous dives and investigation of the water. As a result, plaintiff said he felt comfortable diving into the water. Nevertheless, according to plaintiff, the water level had dropped at least a foot, if not more, on the day of the accident. The plaintiff's friend, Christopher Pieranunzi, corroborated this testimony. He said that on August 10, 1996, the lake appeared shallower than on previous occasions. Pieranunzi, who testified that he also dived off the dock, recalled the water level being belly-button high on previous occasions but said that the water level did not cover plaintiff's shorts the night of the accident. Pieranunzi estimated that the water level had dropped approximately one foot.

Erin Helton, who also was at the property on the night of the accident, disagreed, testifying at trial that there was no appreciable change in the water level. Helton said she had been at the property almost every weekend during the summer of 1996 and would have noticed if the water level had fluctuated by a foot or more. Warren H. Scott, a long-time seasonal resident of the lakefront community, likewise believed the water level had not changed in the summer of 1996. Scott testified that he was a ten-year member of the association—a group which, among other things, controls the lake's depth. Although the association may vote to lower vertical boards attached to the dam to adjust the lake's depth, Scott testified that he could not recall any occasion when the association voted to lower any of the boards during the summer months. Scott

further said that he could not recall the water level dropping by a foot in the summer of 1996 and that such an event would be a memorable occasion.

The defendant moved for judgment as a matter of law at the conclusion of plaintiff's case and again at the close of all the evidence. The trial justice denied the first motion and reserved judgment on the second, instead submitting the case to the jury. The jury returned a verdict in plaintiff's favor for $603,000, but found plaintiff 90 percent comparatively negligent, thereby reducing the jury award to $60,300 plus interest. After the jury's verdict, defendant renewed her motion for judgment as a matter of law, which the trial justice granted on the basis that Rhode Island's Recreational Use Statute, chapter 6 of title 32, shielded defendant from liability.[2] The trial justice also ruled that there was no duty of care running from defendant to plaintiff. The plaintiff timely appealed this decision.

Additional facts will be provided as necessary.

## II

### Analysis

The plaintiff argues on appeal that the trial justice erred when he relied exclusively on Rhode Island's Recreational Use Statute, chapter 6 of title 32, in ruling in defendant's favor. Beyond this error, plaintiff argues that defendant owed him a duty of care, which was breached. The defendant counters that the trial justice did not, in fact, rely exclusively on the Recreational Use Statute but, instead, based his decision on negligence.

---

**2.** Specifically, the trial justice held that, "[t]his Court finds that the recreational statute is applicable to plaintiff's recreational use of defendant's private property, and serves to provide the defendant with immunity from liability."

## A

### Standard of Review

 This Court reviews "the entry of judgment as a matter of law by applying the same standard as the trial justice, 'consider[ing] the evidence in the light most favorable to the nonmoving party, without weighing the evidence or evaluating the credibility of witnesses, and draw[ing] from the record all reasonable inferences that support the position of the nonmoving party.'" *Calise v. Curtin*, 900 A.2d 1164, 1167–68 (R.I.2006) (quoting *Tedesco v. Connors*, 871 A.2d 920, 927 (R.I.2005)). "A trial justice may grant such a motion only after 'a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue *·-* *.*'" *Hanson v. Singsen*, 898 A.2d 1244, 1248 (R.I.2006) (quoting Super. R. Civ. P. 50(a)(1)). Additionally, this Court reviews matters of statutory interpretation *de novo*. *Park v. Rizzo Ford, Inc.*, 893 A.2d 216, 221 (R.I.2006).

## B

### Negligence

 The defendant's liability for negligence turns on whether defendant owed plaintiff a duty of care and whether that duty of care was breached. Whether a duty of care is owed is a question of law for the court and not the jury. *Volpe v. Fleet National Bank*, 710 A.2d 661, 663 (R.I.1998). Our plenary review reveals that there was no duty extending from defendant to plaintiff in this case. Although we affirm the trial justice's ruling with respect to duty, we do so after our own *de novo* review and on grounds other than those relied upon by the trial justice. *See Ahlburn v. Clark*, 728 A.2d 449, 452 (R.I.1999) (noting that this Court may "affirm a judgment on grounds not actually relied upon by the trial court to justify its ruling").

 To determine whether a duty of care is owed, Rhode Island, having abolished the common law distinctions between invitee and licensee, employs the reasonableness test that was famously articulated by the Supreme Court of California in the case of *Rowland v. Christian*, 69 Cal.2d 108, 70 Cal.Rptr. 97, 443 P.2d 561 (1968). *Mariorenzi v. Joseph DiPonte, Inc.*, 114 R.I. 294, 307, 333 A.2d 127, 133 (1975); *see also Barrett v. Barrett*, 894 A.2d 891, 895 (R.I.2006). With respect to invitees and licensees, courts must determine whether landowners have satisfied their affirmative duty to exercise reasonable care for the safety of all people reasonably expected to be upon the premises. *Mariorenzi*, 114 R.I. at 307, 333 A.2d at 133. "[T]hat duty includes an obligation to protect against the risks of a dangerous condition existing on the premises, provided the landowner knows of, or by the exercise of reasonable care would have discovered, the dangerous condition." *Mead v. Papa Razzi Restaurant*, 840 A.2d 1103, 1107 (R.I.2004) (quoting *Tancrelle v. Friendly Ice Cream Corp.*, 756 A.2d 744, 752 (R.I.2000)).

 In *Banks v. Bowen's Landing Corp.*, 522 A.2d 1222, 1225 (R.I.1987), this Court set forth five factors to guide this negligence analysis. The factors, although helpful, are not determinative in every case as "[t]his [C]ourt has avoided 'definitively commit[ting] itself to [a specific] * * * analytical approach.'" *Ferreira v. Strack*, 636 A.2d 682, 685 (R.I.1994) (quoting *D'Ambra v. United States*, 114 R.I. 643, 649, 338 A.2d 524, 527 (1975)). Rather, considerations of public policy and fairness guide our analysis, *Ferreira*, 636 A.2d at 685, in addition to

"(1) the foreseeability of harm to the plaintiff, (2) the degree of certainty that

the plaintiff suffered an injury, (3) the closeness of connection between the defendant's conduct and the injury suffered, (4) the policy of preventing future harm, and (5) the extent of the burden to the defendant and the consequences to the community for imposing a duty to exercise care with resulting liability for breach." *Banks*, 522 A.2d at 1225.

Like the trial justice, we conclude that plaintiff's harm was foreseeable. The defendant herself testified she was aware that guests often were invited to her property, sometimes in the evening, that they jumped and possibly cannon-balled off the dock, and that someone could be injured diving into the shallow water. In addition, plaintiff's undeniably traumatic injury certainly was adequate proof that he suffered an injury.

However, we disagree with plaintiff that defendant's failure to warn him not to dive off the dock caused his injury. We conclude that the trial justice appropriately characterized plaintiff's behavior as "highly dangerous [and] almost self-destructive," thereby attenuating the causal link to such an extent as to destroy liability. We find helpful the Illinois Appellate Court's decision, *Dowen v. Hall,* 191 Ill. App.3d 903, 138 Ill.Dec. 933, 548 N.E.2d 346 (1989). The *Dowen* court, presented with a similar question of law, held that a defendant owed no duty to a plaintiff when the risk of "executing a flat dive from [a] pier into the uncertain depths of [a] natural lake was open and obvious * * *." Id. at 348. Like the plaintiff in *Dowen,* plaintiff in the instant case chose to dive into dark water without first inspecting the lake to determine its depth. The plaintiff testified that he had executed successful dives off the same dock on three previous occasions and, as a result of these past dives, believed the water was four to four-and-a-half feet deep at the dock's edge,

gradually becoming deeper fifteen to twenty feet from the dock. Despite this knowledge, executing a dive into a shallow lake without first ascertaining whether there has been any change in depth since one's last dive is, to put it mildly, ill-advised. The plaintiff's own testimony supports that he was aware of the potential danger and accordingly had ascertained the water's depth the first time he dove off the dock. The plaintiff testified that on the night of his injury, however, the area was "pretty dark" and he would not have been able to gauge the water level by merely looking before he dove. In our opinion, however, plaintiff had a greater responsibility than merely looking into dark water. It is only reasonable for a diver, who cannot ascertain the water's depth by looking, to further inspect the area before diving into dark water. The danger of diving into shallow water was open and obvious to a twenty-four-year-old man, regardless of whether a sign was erected alerting him to the danger. Therefore, as a matter of law, plaintiff must be held to have had knowledge and an appreciation of this risk. Ultimately, it was plaintiff's own behavior that caused his injuries.

With respect to the fourth factor, the policy of preventing future harm, we likewise conclude that requiring landowners to erect warning signs and barriers would do little to prevent harm to individuals who, like plaintiff, already are aware of the danger of diving into shallow water. In *Banks,* this Court concluded:

"We concur with the finding of the second trial justice that requiring citizens to place warnings against and barriers preventing persons from diving into shallow water would provide little disincentive to individuals in the position that Banks found himself on the day he sustained his injuries. As a practical matter, the danger of diving into shallow

water is one of common knowledge, and one Banks admits he was aware of. Nevertheless, Banks dove into the water having not first investigated the depth of the harbor at the place where he intended to dive. We fail to see how a warning would prevent such action." *Banks,* 522 A.2d at 1225.

Again, we reiterate that plaintiff in this case, like the plaintiff in *Banks,* was aware of the water's shallow depth on previous occasions but dove into the water without investigating its depth on the day of the accident. Although plaintiff testified that he would not have dived off the dock if he had been warned not to do so, we view this assertion skeptically given plaintiff's inclination to dive from the dock on previous occasions despite knowledge of the lake's shallow waters.

Finally, we are not prepared to impose on every waterfront landowner the burden of warning guests of the danger of diving into water subject to fluctuating depths. Nor do we discern that there is great utility in requiring that signs or barriers be erected on all waterfront property to warn of what is an open and obvious danger. Furthermore, we are unconvinced that requiring signage warning of the danger of diving into shallow water would deter night divers who already have decided to dive into dark water of uncertain depth.

We are of the opinion that in this case defendant did not owe plaintiff a duty of care, but, rather, that plaintiff voluntarily exposed himself to the perils of an open and obvious danger.

## C

### Rhode Island's Recreational Use Statute

■ Before concluding, we are constrained to comment on the trial justice's invocation of Rhode Island's Recreational Use Statute in this case. Although the trial justice methodically evaluated the five *Banks* factors, holding that defendant did not owe plaintiff a duty of care, he *sua sponte* embarked on an analysis of the Recreational Use Statute, which defendant never raised in her answer. In so doing, the trial justice treated a social guest who used private property for recreation as a trespasser. *Smiler v. Napolitano,* 911 A.2d 1035, 1038–39 (R.I.2006). We deem this error.

■ To determine whether limited immunity under the Recreational Use Statute extends to defendant in this case, we must look to the statute as a whole. *See In re Brown,* 903 A.2d 147, 149 (R.I.2006) ("It is an equally fundamental maxim of statutory construction that statutory language should not be viewed in isolation."). This Court makes every effort to effectuate the legislative intent, while avoiding construing a statute to reach an absurd result. *State v. Menard,* 888 A.2d 57, 60 (R.I.2005).

■ In *Hanley v. State,* 837 A.2d 707, 713–14 (R.I.2003), we recognized that, in interpreting the Recreational Use Statute, " '[t]he goal is to determine the character of the premises[,]' " and, in so doing, must look to whether the premises " '*qualify as being open to the public for recreational activity* * * *.' " The corollary, of course, is that statutory immunity cannot attach when property is not held open to the public for recreational activity.

It would be both absurd and contrary to the Legislature's stated intent to shield every landowner from liability for injuries that guests suffer while engaging in recreational activity on their property. *See* § 32–6–1 (encouraging landowners to open their properties to the *public* for recreational use); *see, e.g., Snyder v. Olmstead,*

261 Ill.App.3d 986, 199 Ill.Dec. 703, 634 N.E.2d 756, 761 (1994) (refusing to extend the Illinois Recreational Use Act to immunize a landowner who simply invited a few private persons to a picnic); *LePoidevin v. Wilson,* 111 Wis.2d 116, 330 N.W.2d 555, 563 (1983) (refusing to extend statutory immunity under a similar statute to a landowner who invited a family friend to his summer cottage to join him in water sports). As plaintiff aptly notes, "[a]dopting the trial justice's interpretation of the recreational use statute would transform every guest at a backyard party into a trespasser to whom no duty is owed." Given our reluctance to apply the Recreational Use Statute as expressed in decisions such as *Lacey v. Reitsma,* 899 A.2d 455, 458 (R.I.2006), and most recently in *Smiler,* 911 A.2d at 1042, we decline to extend its reach today; indeed, to conclude that the Legislature intended to extend protection to landowners under the facts presented here would be absurd.

In this case, the defendant testified that a "No Trespassing" sign was posted on her property, a clear indication that she had not opened her land to the public for recreational use. Rather, the defendant permitted social guests onto her property for backyard parties, family cookouts, and birthday celebrations. Therefore, we agree with the plaintiff that the trial justice clearly erred by holding that the Recreational Use Statute relieved the defendant of liability for injuries suffered by invited guests.

## Conclusion

Although we conclude that the trial justice clearly erred by applying the Recreational Use Statute in this case, we affirm the judgment of the Superior Court, given our determination that the defendant owed no duty of care to the plaintiff. The record shall be remanded to the Superior Court.