DECISION
This matter is before the Court for decision on Plaintiffs, Simcha Berman and Sarah Berman's,[1] motion for partial summary judgment on the affirmative defense asserted by each of the Defendants; viz., the Preservation Society of Newport ("Society"), the State of Rhode Island ("State"), and the City of Newport ("City") (collectively "Defendants") pursuant to the state's Recreational Use Statute, R.I. Gen. Laws 1956 § 32-6-1 et seq. Also before the Court are Defendants' cross-motions for summary judgment.
 Facts and Travel
On August 17, 2000, the newly-married Plaintiffs visited property, owned and operated by the Society, known as "The Breakers," a celebrated Newport mansion. They paid an admission fee and took a guided tour of the mansion, which lasted approximately one to one and one-half hours. During the tour of the mansion's interior, the attendees were directed to observe, from an upper-story window, ocean views including the Cliff Walk; and, according to Plaintiffs, the guide "invited and encouraged . . . [the] customers to enjoy and explore on their own all the *Page 2 
exterior grounds of The Breakers, including the Cliff Walk and shoreline area, after the guided tour was over." (See Pls.' Mem. at 3.)
After the mansion tour concluded, the Plaintiffs explored the Breakers' grounds and took some photographs on the backyard lawn. They exited the Breakers' property through a gate on the left side of the fenced-in backyard onto Shepard Avenue, a public thoroughfare. From there, they walked nearly one hundred yards down Shepard Avenue to the Cliff Walk. While walking along an area of the Cliff Walk that winds through the Breakers' property, Plaintiffs stepped from the paved walk onto a grassy area on the ocean side of the walk. Simcha, who proceeded first down what he believed to be a path which lead to the ocean, fell from the cliff after the ground beneath his feet gave way. Sadly, as a result of the fall, he suffered severe injuries which have rendered him a quadriplegic.
The record in this case establishes that the Society, as well as all abutters, owns fee title to the walk subject to the public's right to pass and repass. The record further reveals that the City has supreme authority over the Cliff Walk in that it has enacted ordinances placing the Cliff Walk under formal city authority; it has established the Cliff Walk Commission, assigned closing hours for the walk, and regulated bicycle and motorcycle use on the walk. The City has also engaged in repair, renovation, improvement, and maintenance activities on the walk. The record also contains an abundance of evidence demonstrating joint City-State efforts to procure funding for Cliff Walk restoration, including evidence that, over the past twenty years, the State has made substantial expenditures to improve the landmark.
In 2003, Plaintiffs filed the instant action against Defendants, alleging that Defendants' negligence caused Simcha's injuries because Defendants failed to properly inspect, maintain, and repair the Cliff Walk. In 2005, Defendants moved for summary judgment, arguing that they *Page 3 
were immune from liability pursuant to the Recreational Use Statute. Although the trial justice found "a joint venture going on between and among the defendants," as well as "a real question . . . as to whether or not there should have been more protection along the walks," he denied the motions for summary judgment "given the circumstances of the case . . . [and] the ambiguities . . . in the law." Now, nearly two years later, Plaintiffs have filed a motion for summary judgment on the same issue that was presented in the motions heard by the previous justice. The Defendants have objected and filed cross-motions, accompanied by supporting memoranda and exhibits.
 Plaintiffs' Arguments
Plaintiffs contend that the Recreational Use Statute is inapplicable, as a matter of law, to the claims against the Society because it charged Plaintiffs an admission fee to enter upon the Breakers' property. They also argue that the statute does not apply to invited guests of a landowner; and, as the Society's invited guests and customers, they were owed a special duty of care.
As for their claims against the State and City, Plaintiffs — without citing any authority — assert that neither of these Defendants has standing to raise the Recreational Use Statute as an affirmative defense. More specifically, Plaintiffs argue that neither the State nor the City has an ownership interest in the Breakers' property, and that their claims against these Defendants are predicated on the fact that both entities have "actively participated and collaborated in maintaining, repairing, and managing the Cliff Walk"; thereby assuming and "exercising joint responsibility and control" over the area. (Pls.' Mem. at 7-8.) *Page 4 
 The Society's Arguments
The Society counters that although it charged Plaintiffs a fee to tour the mansion and grounds, no fee was charged to Plaintiffs to utilize the Cliff Walk, an area open to the public for recreational use. The Society further specifies that the Plaintiffs had exited the Breakers enclosure and walked one hundred yards down a public thoroughfare before reaching the Cliff Walk. Because this area is open to the public for recreational uses, i.e., hiking and viewing or enjoying scenic sites, the Society additionally asserts that there is no evidence in the record demonstrating that it willfully or maliciously failed to warn Plaintiffs and, thus, summary judgment should enter in its favor. Finally, it argues that the "law of the case doctrine" should not preclude this Court from entering summary judgment in its favor now because the previous decision was clearly erroneous and because new case law has been decided by the Rhode Island Supreme Court which clarifies the applicability of the Recreational Use Statute.
 The State's and the City's Arguments
The State and City proffer arguments similar to their co-defendant. They contend that the Recreational Use Statute defines "owner" broadly so as to include a "person in control of the premises including the state and municipalities." See Section 32-6-2(3). Thus, since Plaintiffs suggest in their memorandum that the State's and the City's liability is premised on the fact that both entities paid for and undertook repair and maintenance efforts on the Cliff Walk and, thus, jointly controlled the walk, the State and City argue that Plaintiffs implicitly agree that they fall within the definition of "owner" of the Cliff Walk. Moreover, they note that no fee was charged by either entity for Plaintiffs to enter and that there is no evidence that either willfully or maliciously failed to guard against a dangerous condition. Accordingly, the State and City assert that summary judgment should enter in their favor. They, too, contend that the "law of the case *Page 5 
doctrine" should not preclude this Court from entering summary judgment in its favor now because the previous decision was clearly erroneous and because new case law has been decided by the Supreme Court which clarifies the applicability of the Recreational Use Statute.
 Analysis
The General Assembly enacted the Recreational Use Statute in order "to encourage owners of land to make land and water areas available to the public for recreational purposes by limiting their liability to persons entering thereon for those purposes." See Section 32-6-1. Thus, except for under certain delineated circumstances, an owner of land who either directly or indirectly invites or permits without charge any person to use that property for recreational purposes does not thereby:
 (1) Extend any assurance that the premises are safe for any purpose;
 (2) Confer upon that person the legal status of an invitee or licensee to whom a duty of care is owed; nor
 (3) Assume responsibility for or incur liability for any injury to any person or property caused by an act or omission of that person.
Section 32-6-3 (emphasis added). The statute also provides the following definitions:
 (1) "Charge" means the admission price or fee asked in return for invitation or permission to enter or go upon the land;
 (2) "Land" means land, roads, water, watercourses, private ways and buildings, structures, and machinery or equipment when attached to the realty;
 (3) "Owner" means the private owner possessor of a fee interest, or tenant, lessee, occupant, or person in control of the premises including the state and municipalities;
 (4) "Recreational purposes" includes, but is not limited to, any of the following, or any combination thereof: hunting, fishing, swimming, boating, camping, picnicking, hiking horseback riding, bicycling, pleasure driving, nature study, water skiing, water sports, viewing or enjoying historical, archaeological, scenic, or scientific sites, and all other recreational purposes contemplated by this chapter; and *Page 6 
 (5) "User" means any person using land for recreational purposes.
Section 36-6-2 (emphasis added).
However, immunity under the statute is not absolute. More particularly, § 32-6-5, entitled "Limitation on chapter," provides that:
 (a) Nothing in this chapter limits in any way any liability which, but for this chapter, otherwise exists:
 (1) For the willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity after discovering the user's peril; or
 (2) For any injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof, except that in the case of land leased to the state or a subdivision thereof, any consideration received by the owner for that lease shall not be deemed a "charge" within the meaning of this section.
Our Supreme Court has noted that "the obvious intention of the Legislature was to treat those who use private property for recreational purposes as though they were trespassers." Hanley v. State,837 A.2d 707, 713 (R.I. 2003) (citing Tantimonico v. Allendale Mut. Ins.Co., 637 A.2d 1056, 1060 (R.I. 1994)). Under Rhode Island law, "a landowner does not owe a trespasser any duty until after the trespasser is discovered in a position of peril. Once the trespasser is discovered, the landowner owes the trespasser a duty to refrain from willfully and wantonly injuring the trespasser." Cain v. Johnson, 755 A.2d 156, 162
(R.I. 2000). Thus, under the Recreational Use Statute, no duty would arise toward those who use private property for recreational purposes "until . . . [they have] been discovered in a position of peril."Id. at 164. *Page 7 
 A. Plaintiffs' Motion for Summary Judgment
1. The Society
With respect to Plaintiffs' arguments pertaining to the Society, they contend that the Recreational Use Statute is inapplicable to their claims against the Society because it charged them a fee to enter the Breakers' property. Plaintiffs readily admit in their memorandum that a factual dispute exists as to whether the admission tickets sold to Plaintiffs allowed them access to the mansion and exterior grounds, including the Cliff Walk, or whether the fee was charged only for access to the mansion and immediate grounds, but not the Cliff Walk, as the Society contends. (See Pls.' Mem. at 5.) However, "[f]or the charge to constitute an admission fee it must be established that it is imposed in return for recreational use of the land." Hanley, 837 A.2d at 714
(citing Majeske v. Jekyll Island State Park Auth., 209 Ga. App. 118,433 S.E.2d 304, 305-06 (Ga.Ct.App. 1993)). Thus, in order for Plaintiffs to prevail on their motion for summary judgment, they must proffer evidence which conclusively establishes that the admission fee charged by the Society was imposed for recreational use of the Cliff Walk. Other than stating that the Society "invited and encouraged . . . [the] customers to enjoy and explore on their own all the exterior grounds of the Breakers, including the Cliff Walk and shoreline area, after theguided tour was over," the record is completely devoid of any evidence to support such a conclusion.
As for their second argument, Plaintiffs argue that the statute does not apply to invited guests of a landowner and, as the Society's invited guests and customers; they were owed a special duty of care. However, this argument erroneously focuses on how the would-be plaintiff got onto the property in question, not the applicable statute. See Bucki v.Hawkins, *Page 8 914 A.2d 491, 497 (R.I. 2007) ("To determine whether limited immunity under the Recreational Use Statute extends . . . we must look to the statute as a whole."). In Hanley, our Supreme Court held:
 [t]he existence of statutory immunity . . . should focus on the nature and scope of activity for which the premises are held open to the public. The goal is to determine the character of the premises. If the premises qualify as being open to the public for recreational activity, the statute does not require a distinction to be made between plaintiffs depending upon the activity in which each was engaged at the time of injury."
837 A.2d at 713-14 (emphasis in original); see also Bucki,914 A.2d at 497 ("[S]tatutory immunity cannot attach when property is not held open to the public for recreational activity."). Thus, it is clear that if the statutory criteria are met and the property is open to the public for recreational activity, then regardless of how the plaintiff arrived on the property, limited immunity would attach. For the foregoing reasons Plaintiffs' motion for summary judgment against the Preservation Society of Newport is denied.
2. The State and the City
Plaintiffs' arguments with respect to their motion against the State and City regarding standing are likewise tenuous. Plaintiffs reiterate their claim — without citing any authority — that neither Defendant has standing to raise the Recreational Use Statute as an affirmative defense. However, as noted above, "[t]o determine whether limited immunity under the Recreational Use Statute extends . . . we must look to the statute as a whole." Bucki, 914 A.2d at 497.
Under § 36-6-2(3), "owner" means the "private owner possessor of a fee interest, or tenant, lessee, occupant, or person in control of thepremises including the state and municipalities." Additionally, Plaintiffs have proffered several exhibits in the form of letters written from various city, state, and federal officials dating from the 1960's to the 1990's which indicate that the Cliff Walk is a public right-of-way, and that the State and City have expended money and engaged in efforts to repair and maintain the walk. (See Pls.' Ex. 4.) Additionally, *Page 9 
the City's Answers to Interrogatories indicate that the City and the State, as well as the abutters, have worked together to maintain the Cliff Walk. (See Pls.' Ex. 7.) While this evidence may not conclusively establish that the State and/or the City "control" the Cliff Walk, it does, at a minimum, create an issue for a jury to determine. Therefore, Plaintiffs' motion for summary judgment against the State and City must be denied.
 B. The Cross-Motions filed by the Society, The State, and The City
Before addressing the substantive arguments raised by the three Defendants, the Court must determine if the "law of the case doctrine" precludes their renewed motions for summary judgment on the issue of the Recreational Use Statute. The law of the case doctrine provides that "ordinarily, after a judge has decided an interlocutory matter in a pending suit, a second judge, confronted at a later stage of the suit with the same question in the identical manner, should refrain from disturbing the first ruling." Weybosset Hill Invs., LLC v. Rossi,857 A.2d 231, 237 (R.I. 2004) (citing Ferguson v. Marshall Contractors,Inc., 745 A.2d 147, 151 (R.I. 2000)). Nevertheless, "[this] doctrine does not apply when the second motion is based on an expanded record."Id. (citing Goodman v. Turner, 512 A.2d 861, 864 (R.I. 1986)). However, it is incumbent upon the moving party to bring to the court's attention material that significantly extends the record. Id. (citingSalvadore v. Major Elec. Supply, Inc., 469 A.2d 353, 356 (R.I. 1983)). Moreover, the doctrine should not be invoked to "perpetuate a clearly erroneous earlier ruling." Chavers v. Fleet Bank (RI), N.A.,844 A.2d 666, 677 (R.I. 2004).
It should be noted that our Supreme Court has "admonished" Superior Court justices "to consider the purpose of the doctrine before reversing an earlier ruling on the identical issue." Id. at 677-78. According to the Supreme Court, "[t]he purpose of the law of the case doctrine is to ensure `the stability of decisions and avoid unseemly contests between judges that could result *Page 10 
in a loss of public confidence in the judiciary.'" Id. at 678 (quotingCommercial Union Ins. Co. v. Pelchat, 727 A.2d 676, 683 (R.I. 1999)). However, the Court has also opined that:
 a motion justice's violation of the law of the case doctrine alone will constitute reversible error only in the rarest of situations. Because a motion justice may reverse an earlier ruling that is clearly erroneous . . . , this Court will typically determine the propriety of both rulings. Given this Court's interest in judicial economy, it is difficult to conceive a situation in which the law of the case doctrine will require reversal of a subsequent correct ruling.
Id. at 678 n. 10 (internal citations omitted).
As previously noted, all three Defendants assert that the decision of the previous justice is clearly erroneous. Also, the City and State direct the Court to subsequently decided case law of the Supreme Court which clarifies the applicability of the Recreational Use Statute; and, specifically holds that despite its harsh results, the Recreational Use Statute must be applied as written so as to free governmental entities, as well as private property owners, from liability for incidents which occur on property that is opened to the public. See, e.g., Labedz v.State, 919 A.2d 415 (R.I. 2007); Smiler v. Napolitano, 911 A.2d 1035
(R.I. 2006); Cruz v. Providence, 908 A.2d 405 (R.I. 2006); Lacey v.Reitsma, 899 A.2d 455 (R.I. 2006).
A review of the transcript of the previous justice's bench decision reveals that he questioned whether a state could open property for recreational use, invite people to it, and still be immune from liability. (See Tr. at 13.) However, the cases cited above clearly establish that such a result was the specific purpose of the Recreational Use Statute, regardless of how counterintuitive this policy choice may seem to some. Additionally, it could be argued that the justice applied the law with respect to the issue of whether any of the Defendants' actions constituted willful or wanton conduct without first determining whether each Defendant qualified for immunity under the Recreational Use Statute. For instance, as noted above, if a Defendant qualified for immunity under the statute, then the statutorily prescribed willful and wanton *Page 11 
standard requires evidence that the defendant first found the plaintiff in a position of peril. Conversely, if a defendant is not entitled to immunity under the statute, then the duty owed to the plaintiff varies depending upon how he or she arrived on the property, the conditions of the property, and the defendant's knowledge of the conditions on the property, among other considerations. See Cain, 755 A.2d at 159-63. The previous justice appears to have applied the same standard to each Defendant, which focused on their knowledge of the condition of the Cliff Walk and their "wanton disregard" for safety of people utilizing it.
Aside from the possible missteps taken during the first hearing, there is a more fundamental reason to re-consider the Defendants' cross-motions. In the first set of motions heard before the previous justice, Defendants had moved for summary judgment but Plaintiffs had not filed cross-motions. Now, Plaintiffs are moving for summary judgment on the same issue(s) previously ruled upon and have consequently reopened the door for reconsideration. Thus, this Court deems it appropriate to reconsider Defendants' arguments.
1. The Society
It is undisputed that the Society is the fee owner of the property where the incident occurred. Additionally, as previously noted, "[f]or the charge to constitute an admission fee it must be established that it is imposed in return for recreational use of the land."Hanley, 837 A.2d at 714 (citing Majeske v. Jekyll Island State ParkAuth., 209 Ga. App. 118, 433 S.E.2d 304, 305-06 (Ga.Ct.App. 1993)). Thus, in order for Plaintiffs to defeat the Society's motion, they must proffer evidence which establishes a factual dispute pertaining to whether the admission fee charged by the Society was imposed for recreational use of the Cliff Walk. However, other than stating that the Society "invited or encouraged . . . [the] customers to enjoy and explore on their own all the exterior grounds of the Breakers, including the Cliff Walk and shoreline area, after *Page 12 the guided tour was over," the record is completely devoid of any evidence to support such a conclusion. Finally, under the Recreational Use Statute, no duty would arise toward those who use private property for recreational purposes "until . . . [they have] been discovered in a position of peril." Here, there is simply no evidence which indicates that the Society discovered Plaintiffs in a position of peril.[2]
Thus, the Society's motion for summary judgment is granted.
2. The City
The Recreational Use Statute defines "owner" broadly so as to include a "person in control of the premises including the state andmunicipalities." As noted, the record is brimming with evidence indicating that the City has authority over the Cliff Walk, extending well beyond merely paying for and engaging in repair and maintenance activities. Thus, based on this evidence, and Plaintiffs' failure to present any evidence which creates a factual issue with respect to this element, the City — for purposes of the Recreational Use Statute — is an owner of the Cliff Walk. However, as with the Society, it neither charged the Plaintiffs to go upon the walk nor discovered them in a position of peril which would create a duty of care. Thus, the City is also entitled to summary judgment. *Page 13 
3. The State
With respect to the State, the Court concludes that there is a genuine issue of material fact regarding the nature of the State's relationship to the Cliff Walk. There is evidence in the record that the State collaborated with the City to obtain funding for Cliff Walk restoration, as well as evidence that the State has expended enormous sums of money to improve the Cliff Walk.[3] Moreover, according to the City's Answers to Interrogatories, the State did an extensive rehabilitation of a portion of the Cliff Walk in the early 1990s. (See Pls.' Ex. 7.) However, unlike the City, the State never formally asserted authority over the Cliff Walk and there is no evidence that it regulates, or polices the Cliff Walk, as the City does. Thus, as to the State, a trier of fact must determine the State's relationship to the Cliff Walk and whether it should be deemed an "owner," particularly with reference to the extent of any control the State exercised, for purposes of the Recreational Use Statute.
 Conclusion
The Plaintiffs' Motion for Partial Summary Judgment and the Defendant State's Cross-Motion for Summary Judgment are denied. The Cross-Motions of the Preservation Society and the City of Newport are granted. Counsel shall submit an Order for entry consistent with this Decision.
[1] Plaintiffs were married at the time the events in question occurred. They subsequently divorced and Sarah remarried assuming the name Chaya Sarah Aryeh.
[2] This Court is constrained to apply the provisions of the Recreational Use Statute as it presently exists. The Court is aware that our Supreme Court has repeatedly expressed concern regarding the classification, as trespassers, of users of Rhode Island's state and municipal recreational sites. See Lacey v. Reitsma, 899 A.2d 455, 458
(R.I. 2006) ("While we are cognizant of the fact that our judicial role is to interpret and apply statutes and not to legislate, it is our view that it is entirely appropriate for us to suggest that the General Assembly . . . focus upon the result in this case. . . . We wish respectfully, but forcefully, to state that we find it troubling . . . to be confronted with a legal regime whereby the users of state and municipal recreational sites must be classified for tort law purposes `as though they were trespassers.'") (citations omitted); Smiler v.Napolitano, 911 A.2d 1035, 1042 (R.I. 2006) ("[Y]et again, we urge the Legislature to revisit the Recreational Use Statute so that we are not again constrained to reach such a troubling result."); Labedz v.State, 919 A.2d 415, 417 (R.I. 2007) ("In each of the cases which followed Lacey, we reiterated both our concern about the real-world results that the subject provision of the Recreational Use Statute required us to reach and our suggestion that the General Assembly revisit the provisions of the statute. . . . We take this opportunity once again to urge the General Assembly to review the statute.").
[3] See Cain v. Johnson, 755 A.2d 156, 172 (R.I. 2000) (Goldberg, J., concurring in part and dissenting in part) ("With respect to the state, I believe that there is a genuine issue of material fact with respect to the state's relationship to the Cliff Walk. The record is replete with evidence of joint city-state efforts to secure funding for Cliff Walk restoration and evidence that during the past two decades the state has spent hundreds of thousands of dollars on improvements to this historical landmark.").