Roxanna **MORALES** a/k/a
Roxanna **Vinagre,**

v.

**TOWN OF JOHNSTON et al.**

v.

**Ronald Rotondo d/b/a A Cut Above Landscaping Service.**

**No. 2004–310–Appeal.**

Supreme Court of Rhode Island.

April 26, 2006.

---

Joseph G. Miller, for Plaintiff Morales.

Peter F. Mathieu, Providence, for Defendant Town of Johnston.

Mark T. Reynolds, Providence, for Defendant Central Falls School District.

Megan J. Goguen, Providence, for Defendant Rotondo.

Present WILLIAMS, C.J., GOLDBERG, SUTTELL, and ROBINSON, JJ.

## OPINION

Justice GOLDBERG, for the Court.

These consolidated cases came before the Supreme Court on December 7, 2005. The plaintiff, Roxanna Morales a/k/a Roxanna Vinagre (Morales or plaintiff), filed suit against the City of Central Falls and the Central Falls School District (Central Falls or school district), the Town of Johnston and the Johnston School Committee (Johnston or town), and Ronald Rotondo, d/b/a A Cut Above Landscaping Service (Rotondo), for an injury she suffered while playing in a high school soccer game. After plaintiff presented her case, the trial justice granted Johnston's and Rotondo's motions for judgment as a matter of law. The jury returned a verdict against Central Falls, the only remaining defendant, and awarded plaintiff $212,000. Central Falls appeals from several of the trial justice's rulings. The plaintiff appeals from the trial justice's grant of judgment as a matter of law in favor of Johnston and Rotondo. For the reasons stated herein, we vacate the judgment with respect to Central Falls and Johnston, affirm the judgment concerning Rotondo, and remand these cases to the Superior Court.

## Facts and Travel

The multiple appeals and myriad of issues in this case arose from a simple event and an equally simple place: a high school soccer game and the field on which the game was played. On September 10, 1997, Morales, a student-athlete at Central Falls High School and a member of its soccer team, played in an away-game against Johnston High School. Although it is unclear from the record which team won the game that day, plaintiff suffered an extraordinary loss. The game was held at Johnston High School—on a field owned by the town. The coaches from both teams discussed beforehand a potential hazard posed by a water drain that was partially covered by grass and located just out of bounds from the playing field. The Central Falls coach testified that, before the game, both he and his assistant coach warned their players about the water drain. However, plaintiff testified that she had no recollection of that warning. During the game, while chasing after the soccer ball near the water drain, plaintiff stumbled into the water drain and suffered a severe knee injury that required two surgeries and resulted in permanent disability.

The plaintiff filed a negligence action against Central Falls under a theory of *respondeat superior*, based *inter alia*, on the negligence of its soccer coaches. She did not sue the coaches because athletic coaches in this state are immune from suit

pursuant to G.L.1956 § 9–1–48(b).[1] In a separate complaint, plaintiff brought a negligence claim against Johnston for its failure to maintain the field in a safe condition and for its negligent failure to warn of a dangerous condition on the field. The town filed a third-party action against Rotondo, who was responsible for mowing the field, seeking indemnification and contribution in the event the town was adjudged liable. Central Falls also filed a third-party complaint against Rotondo for indemnification and contribution. Thereupon, plaintiff brought suit against Rotondo alleging that, as the party responsible for mowing the grass and maintaining the area around the drainage grates, Rotondo breached his duty of care and proximately caused plaintiff's injury. The Superior Court consolidated the cases.

During pretrial proceedings, Central Falls moved for summary judgment on the ground that § 9–1–48(b) barred plaintiff's derivative claim against the school district based upon the coaches' negligence. The motion was denied by a hearing justice of the Superior Court and, on March 15, 2004, the cases were tried before a jury.

At the conclusion of plaintiff's case, all three defendants moved for judgment as a matter of law in accordance with Rule 50 of the Superior Court Rules of Civil Procedure. The trial justice granted judgment in favor of Johnston and Rotondo, but denied Central Falls' motion. The trial justice found that Johnston could not be found liable as a matter of law, based on G.L.1956 § 32–6–3, the recreational use statute.[2] He concluded that Johnston was a land owner within the provisions of the statute and also concluded that the plaintiff had failed to present any evidence that justified an application of the willful conduct exception set forth in § 32–6–5.[3]

Concerning Rotondo, the trial justice found that plaintiff failed to prove the standard of care for a landscaper under the circumstances in this case. The trial justice found that Rotondo was hired to cut the lawn on the playing field twice a week and that no evidence was introduced to indicate that he failed to perform those duties. Consistent with his finding that no evidence of negligence was introduced against Rotondo, the trial justice also di-

1. General Laws 1956 § 9–1–48, entitled "**Immunity from civil liability-Sports teams,**" provides in part:

> "(b) * * * [N]o person who renders services as a manager [or] coach * * * or who assists a manager [or] coach * * * in an interscholastic or intramural sports program organized and conducted in accordance with and subject to the rules, regulations, and jurisdiction of the Rhode Island interscholastic league * * * shall be liable to any person for any civil damages as a result of any acts or omissions in the rendering of such services or assistance unless the acts or omissions of the person were committed in willful, wanton, or reckless disregard for the safety of the participants in the interscholastic or intramural sports program."

2. General Laws 1956 § 32–6–3, entitled "**Liability of landowner.**" provides in part:

> "[A]n owner of land who either directly or indirectly invites or permits without charge any person to use that property for recreational purposes does not thereby:
> "(1) Extend any assurance that the premises are safe for any purpose;
> "(2) Confer upon that person the legal status of an invitee or licensee to whom a duty of care is owed; nor
> "(3) Assume responsibility for or incur liability for any injury to any person or property caused by an act of [sic] omission of that person."

3. Section 32–6–5 provides in part:

> "(a) Nothing in this chapter limits in any way any liability which, but for this chapter, otherwise exists:
> "(1) For the willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity after discovering the user's peril[.]"

rected that judgment enter in favor of Rotondo on plaintiff's complaint and on the third-party complaints brought by Johnston and Central Falls.

The trial justice denied Central Falls's motion for judgment as a matter of law, declaring that a duty existed on the part of the Central Falls coach to warn of a known danger and that the school district could be held liable for such purported negligence. The trial court, in denying the school district's Rule 50 motion, limited plaintiff's case to potential liability for the alleged negligence of the coaches. Although plaintiff argued that the school district may have direct liability, based on alleged negligent supervision of its coaching staff and a failure to promulgate written protocols and regulations, this claim was not submitted to the jury. The trial justice found that plaintiff failed to present any evidence of independent negligence on the part of the school district, and plaintiff has not appealed from that ruling.

The plaintiff's case proceeded against Central Falls. The jury returned a verdict for plaintiff and fixed her damages at $400,000, which was reduced to $212,000 based on plaintiff's comparative negligence. Central Falls argued that the statutory cap on damages as set forth in the Tort Claims Act, G.L.1956 § 9–31–3,[4] should limit the award to $100,000 and that prejudgment interest should not be added to the judgment. Finding that Central Falls was engaged in a proprietary function rather than a governmental function, the trial justice directed the entry of judgment for plaintiff in the amount of $212,000 plus prejudgment interest and

costs. Central Falls filed motions for a new trial concerning plaintiff's claims and its third-party complaint against Rotondo. These motions were denied, and Central Falls appealed. The plaintiff also has appealed the trial justice's grant of motions for judgment as a matter of law with respect to Johnston and Rotondo.

## Central Falls School District

■ Before this Court, Central Falls assigns error to the denial of its motion for summary judgment by a Superior Court hearing justice and to several rulings of the trial justice. Because we are satisfied that summary judgment should have been granted in this case, it is unnecessary for us to address those additional contentions.

The school district argues that the trial justice erred in denying its motion for summary judgment on the basis of the coaches' immunity. Central Falls contends that the immunity provision set forth in § 9–1–48, which shields its coaches from tort claims, also precludes plaintiff's derivative claim against the coaches' employer. The school district argues that plaintiff's claim is based solely on a theory of vicarious liability and, because the soccer coaches are immune from liability, there can be no derivative claim against the school district.

■ When reviewing the denial of a motion for summary judgment, this Court applies the same standard as the hearing justice. *Ensey v. Culhane,* 727 A.2d 687, 689 (R.I.1999). In performing that function, we review "the pleadings, affidavits * * * and other [relevant documents] in the light most favorable to the nonmoving

---

4. General Laws 1956 § 9–31–3 provides in part:

 "In any tort action against any city or town or any fire district, any damages recovered therein shall not exceed the sum of one hundred thousand dollars ($100,000);

provided, however, that in all instances in which the city or town or fire district was engaged in a proprietary function in the commission of a tort, * * * the limitation of damages in this section shall not apply."

party" and proceed to determine "whether the moving party is entitled to judgment as a matter of law." *Id.* (quoting *Marchetti v. Parsons,* 638 A.2d 1047, 1049 (R.I. 1994)). The burden of establishing an issue of fact rests with the party opposing the motion for summary judgment and that party may not rely "on allegations or denials in the pleadings or on conclusions or legal opinions." *Taylor v. Mass. Flora Realty, Inc.,* 840 A.2d 1126, 1129 (R.I.2004) (quoting *United Lending Corp. v. City of Providence,* 827 A.2d 626, 631 (R.I.2003)).

To support its argument that the immunity of its soccer coaches bars the plaintiff's claim against the school district, Central Falls points to *DiQuinzio v. Panciera Lease Co.,* 612 A.2d 40 (R.I.1992), in which we analyzed a different immunity statute, G.L.1956 § 28–29–20,[5] the exclusivity provision of the Workers' Compensation Act. In *DiQuinzio,* 612 A.2d at 41, the operator of a motor vehicle negligently injured the plaintiff passenger. The plaintiff sued the vehicle operator, as well as the vehicle's owner, invoking the theory of vicarious liability. *Id.* at 42. This Court held that because the operator of the vehicle was immune from suit pursuant to the exclusivity provision, there could be no cause of action against the vehicle's owner. *Id.* at 43. The Court held that an owner-lessor is not a tortfeasor "except by way of the legal fiction of vicarious liability." *Id.*; *see also DelSanto v. Hyundai Motor Finance Co.,* 882 A.2d 561, 564–65 (R.I.2005).

In this case, we are confronted with a similar set of facts: the coaches of the Central Falls soccer team, the alleged negligent actors, are immune from suit pursuant to § 9–1–48, yet plaintiff's claim against their employer, the school district wholly rests on a claim of *respondeat superior.* Based on our holding in *DiQuinzio,* plaintiff may not look to the Central Falls School District for damages arising from the coaches' negligence.

The plaintiff asserts that a principal may be liable despite the immunity of its agent. For this proposition, plaintiff chiefly relies on *Trotti v. Piacente,* 99 R.I. 167, 206 A.2d 462 (1965), in which this Court held that a "principal 'has no defense because of the fact that * * * the agent had an immunity from civil liability * * *.' " *Id.* at 170, 206 A.2d at 464 (quoting Restatement of *Agency* 2d § 217(b)(ii) at 469). According to plaintiff, this is the rule in a majority of jurisdictions and should control the result in this case. However, our holding in *Trotti* was based on the common law doctrine of interspousal immunity,[6] rather than statutory immunity and was decided by this Court in 1965, before the Legislature abrogated the sovereign immunity of the state and its municipalities.

In *Calhoun v. City of Providence,* 120 R.I. 619, 625–29, 390 A.2d 350, 353–55 (1978), we examined the historical development of the doctrine of sovereign immunity and its demise. Although sovereign immunity has been abolished, there

---

**5.** General Laws 1956 § 28–29–20 provides in part:

"**Rights in lieu of other rights and remedies.**—The right to compensation for an injury under chapters 29–38 of this title, and the remedy for an injury granted by those chapters, shall be in lieu of all rights and remedies as to that injury now existing, either at common law or otherwise against an employer, or its directors, officers, agents, or employees; and those rights and

remedies shall not accrue to employees entitled to compensation under those chapters while they are in effect * * *."

**6.** In *Digby v. Digby,* 120 R.I. 299, 388 A.2d 1 (1978), this Court discussed the erosion of interspousal immunity and abrogated the doctrine with respect to motor vehicle collisions. The doctrine of interspousal immunity met its final demise in 1987, when it was abolished by the Legislature. *See* G.L.1956 § 15–4–17.

remains a "[r]ecognition that there is a zone of governmental operation which should be insulated from tort claims, even in the absence of sovereign immunity." *Id.*, at 629, 390 A.2d at 355. This limited protection from liability is accomplished through legislative enactments granting immunity in certain instances or by this Court, pursuant to the public-duty doctrine. *Id.*; *see, e.g., Houle v. Galloway School Lines, Inc.*, 643 A.2d 822, 827 (R.I. 1994) (holding that public duty doctrine applied to design of school bus routes to shield municipality and its agents from liability because it was a governmental activity). It is the function of the Legislature to weigh "the injured party's demand for justice against the state's equally valid claim to exercise certain powers for the good of all without burdensome encumbrances and disruptive forces." *Calhoun*, 120 R.I. at 628, 390 A.2d at 355.

Section 9–1–48, and the immunity afforded athletic coaches and their assistants is a legislative enactment designed to ensure the continued vitality of interscholastic and intramural sports programs for the state's youth. Based on its determination that important societal interests are furthered by insulating coaches from liability, the General Assembly enacted § 9–1–48, providing for immunity from civil damages for acts or omissions in connection with service as a coach or manager in an organized sports program. Although § 9–1–48 does not contain an explicit provision limiting a municipality's tort liability, the same public policies that support a grant of immunity to a specific class of employee apply with equal force with respect to the employer, absent evidence of independent negligence by the principal. *See DiQuinzio*, 612 A.2d at 44 (principal is not immunized from suit based upon its independent act of negligence that contributed to plaintiff's injuries).

▪ The public policy that underlies § 9–1–48 is the fostering and encouraging of interscholastic sports programs throughout the state by relieving coaches, team managers, and assistants from exposure to liability. However, because plaintiff in this case was permitted to proceed to trial, the coaches were subjected to the very burden the statute seeks to avoid. Exposure of the school district to potential liability also ignores the primary goal of the statute—the promotion of interscholastic sports. In the case at bar, the burden of proof required plaintiff to establish the coaches' negligence; thus, the focus was on the acts or omissions of the coaches. Consequently, the coaches attended the proceedings, were required to testify, and sat through a trial in which their decisions were questioned and their credibility was scrutinized.

In addition, if school districts across the state are subject to liability for the negligence of their coaches, participation in interscholastic athletics may be curtailed or eliminated—an occurrence the statute was intended to avoid. For these reasons, we are persuaded that "if the agent is not liable for his conduct, the principal cannot be responsible." *Calhoun*, 120 R.I. at 630, 390 A.2d at 356.

▪ The plaintiff argues that there was independent negligence by Central Falls apart from the personal negligence of the coaches that supported the judgment in this case. In an amended complaint, plaintiff alleged negligence in the operation, control, supervision, management, administration, guidance, direction, and conduct of the Central Falls High School soccer team.

In *Schultz v. Foster–Glocester Regional School District*, 755 A.2d 153, 155–56 (R.I. 2000), this Court held that the public duty doctrine did not shield a school district from liability arising from an injury suffered during a cheerleading practice be-

cause the injured student was an identifiable person to whom the school district owed a special duty of care. Therefore, the public duty doctrine did not immunize the school district from liability for injuries suffered from a risky cheerleading maneuver.[7] By contrast, however, the case at bar was submitted to the jury based solely on the asserted negligence of the coaches and the vicarious liability of the school district. The plaintiff did not appeal from the judgment entered with respect to her claim against Central Falls based on its own alleged negligence. Thus, the issue of whether Central Falls was independently negligent is not properly before the Court because plaintiff has not appealed from the judgment that was entered with respect to that claim against Central Falls. This issue is deemed waived for purposes of appellate review.[8] *See Harvard Pilgrim Health Care of New England, Inc. v. Rossi,* 847 A.2d 286, 293 (R.I.2004) ("It is well established that a 'litigant must make a timely and appropriate objection during the lower court proceedings before this Court will hear the issue on appeal.'").

For the reasons stated herein, the plaintiff's claim against Central Falls is barred pursuant to § 9–1–48, and the judgment against that defendant is vacated. It is therefore, unnecessary for this Court to reach the school district's remaining arguments.

### Town of Johnston

■ The plaintiff argues that the trial justice erred by granting judgment as a matter of law in favor of the town. The trial justice held that, pursuant to § 32–6–3, the recreational use statute, Johnston was not liable to plaintiff for an injury suffered on its soccer field because, as long as there was no evidence of willful and wanton negligent conduct by the town, its employees, agents, or servants, the town was immune from suit.

■ When reviewing a motion for judgment as a matter of law, a trial justice "considers the evidence in the light most favorable to the nonmoving party." *De-Christofaro v. Machala,* 685 A.2d 258, 262 (R.I.1996). The trial justice may not weigh the evidence or evaluate the credibility of witnesses "and draws from the record all reasonable inferences that support the position of the nonmoving party." *Id.* (citing *Hoffman v. McLaughlin Corp.,* 675 A.2d 404, 405 (R.I.1996)). "If, after such a review, there remain factual issues upon which reasonable persons might draw different conclusions, the motion [for judgment as a matter of law] must be denied, and the issues must be submitted to the jury for determination." *Id.* When this Court reviews a trial justice's decision on a motion for judgment as a matter of law, we are "bound by the same rules and analysis as the trial justice." *Hoffman,* 675 A.2d at 405.

The plaintiff argues that the recreational use statute does not apply to the town's soccer field. According to plaintiff, at least when the field is used for high school soccer games and is not open to the public as anticipated by the enactment, the recreational use statute does not apply. She further contends that the statute does not

---

7. We also noted in *Schultz v. Foster–Glocester Regional School District,* 755 A.2d 153, 156 (R.I.2000), that the doctrine of assumption of the risk may be implicated, and remanded the case to the trial court for trial on that issue.

8. The trial justice instructed the jury: "If you find any negligence on the part of any of the servants, agents or employees in this case, the coaches, of course, of the City of Central Falls School, that negligence would be legally imputed to the Central Falls School District." The independent negligence of the school district was not raised at trial nor was the issue submitted to the jury.

pertain to claims for injuries suffered by student-athletes who are invitees to whom a special duty of care is owed.

■ We are satisfied that plaintiff was not a member of the public as contemplated by the recreational use statute. The declared purpose of § 32–6–3 is to "encourage owners of land to make land and water areas *available to the public* for recreational purposes by limiting their liability to persons entering thereon for those purposes." Section 32–6–1. (Emphasis added.) In *Tantimonico v. Allendale Mutual Insurance Co.*, 637 A.2d 1056, 1060 (R.I.1994), this Court noted that "the obvious intention of the Legislature was to treat those who use private property for recreational purposes as though they were trespassers."[9] The clear intent of the recreational use statute is to shield landowners against liability to those who come upon the owner's land for recreation; a student athlete participating in an organized sport on a designated athletic field does not fall within its provisions. The soccer game played on the field in question was a school-sponsored event that took place under the active supervision of school officials. In such a circumstance, plaintiff cannot be treated as though she were a trespasser. *Id.* at 1060.

■ The plaintiff argues that, as a student playing in a high school soccer game, she was an invitee of the Town of Johnston and as such was owed a special duty of care. The plaintiff characterizes the relationship between Johnston and plaintiff as one in which the town has a duty to protect student-athletes on its field. Further, plaintiff contends that the relationship between the student and the school does not end with the afternoon dismissal, but rather continues to school sponsored activities and the teams that are invited to participate in those activities. We agree. In the context of this case, Johnston is not insulated from liability for its ordinary negligence. Moreover, the public duty doctrine does not provide it with a safe harbor. A student-athlete in these circumstances is an identifiable person to whom the school district owes a special duty of care such that the public duty doctrine will not relieve it from liability for its negligent acts.

■ In *Saunders v. State*, 446 A.2d 748, 750 (R.I.1982), this Court noted that when special circumstances bring to the state's attention an identifiable group of persons at risk of harm, a special duty of care is owed. "The public duty doctrine shields the state and its political subdivisions from tort liability arising out of discretionary governmental actions that by their nature are not ordinarily performed by private persons" except in three situations.[10] *Schultz*, 755 A.2d at 155 (quoting *Haley v. Town of Lincoln*, 611 A.2d 845, 849 (R.I.1992)). One such situation is when the government owes a special duty to the plaintiff. *Id.* (citing *Kuzniar v. Keach*, 709 A.2d 1050, 1053 (R.I.1998)). In

---

9. The statute was amended in 1996 to include the state and municipalities under the definition of owner and currently embraces public lands specifically designated and operated for public recreational use. *See Hanley v. State*, 837 A.2d 707, 712 (R.I.2003) (for purposes of immunity from suit for injuries sustained on land made available for recreational use, the state and its municipalities are considered owners pursuant to § 32–6–2(3)).

10. The public duty doctrine is applicable to governmental functions, except: "(1) when the governmental entity owes a 'special duty' to the plaintiff, (2) when the alleged act or omission on the part of the governmental entity was egregious, or (3) when the governmental entity engaged in activities normally undertaken by private individuals or corporations." *Schultz v. Foster–Glocester Regional School District*, 755 A.2d 153, 155 (R.I.2000) (quoting *Kuzniar v. Keach*, 709 A.2d 1050, 1053 (R.I.1998)).

*Schultz,* 755 A.2d at 155–56, this Court held that government municipalities may be liable under the special duty doctrine if, as here: (1) a municipal official has knowledge of the plaintiff or her situation; (2) municipal officials acted or failed to act in some way that was potentially injurious to a plaintiff; and (3) the injury was a reasonably foreseeable consequence of the municipality's action or inaction. We hold that such a special relationship existed here, between Johnston and plaintiff, such that Johnston owed a special duty to the plaintiff to protect her from the grievous injury suffered in this case.

 School children form an identifiable group subject to foreseeable harm. *See Schultz,* 755 A.2d at 156. The plaintiff was a student playing in a soccer game on a field owned and operated by the Town of Johnston. The plaintiff was not protected from the potential hazard posed by the water drain and a jury could conclude that her injury was a foreseeable result of the town's breach of its duty of care. If we held that the recreational use statute applied to students while playing organized sports on school premises, then school children and their parents would be forced to bear the risk of deficient facilities and defective conditions over which they have no control. Thus, we hold that Johnston owed the plaintiff a special duty of care to protect her from a dangerous condition on the athletic field. We are satisfied that a jury, based on this record, reasonably could find Johnston liable for negligently allowing a dangerous condition on its premises and negligently failing to warn plaintiff of this danger.

To support its contention that the town is immune pursuant to § 32–6–3, Johnston points to this Court's decision in *Hanley v. State,* 837 A.2d 707 (R.I.2003). In *Hanley,* this Court applied the recreational use statute to the claims brought by a camper

for injuries suffered in a fall on a road in a state park. In reaching our holding in *Hanley,* this Court stated:

> "[I]mmunity does not depend upon the specific activity pursued by the plaintiff at the time of the plaintiff's injury. Rather, *the inquiry should focus on the nature and scope of the activity for which the premises are held open to the public.* The goal is to determine the character of the premises." *Hanley,* 837 A.2d at 713 (quoting *Rankey v. Arlington Board of Education,* 78 Ohio App.3d 112, 603 N.E.2d 1151, 1154 (1992)).

 We are of the opinion that *Hanley* is distinguishable from the facts in the case at bar. The recreational use statute requires an examination of the nature and scope of the activities occurring on the land and thus mandates that the premises be available to the public for recreational purposes. This soccer field was not open to the public for recreational activities when Morales was injured; to the extent that the field was open to the public, if at all, the public's right to use the facility and the scope of its use were controlled. The field was developed, utilized and maintained for school-sponsored athletics. In *Hanley,* the plaintiff was injured in a state park where her only relationship to the property was as a recreational user of a public campground. Hanley was injured at a place the public was invited for recreational use.

Because our focus is on the character of the premises and the nature and scope of the activity for which the premises are held open to the public, this case is not controlled by the recreational use statute. At the time of plaintiff's injury, only members of the Central Falls and Johnston soccer teams were permitted on the field. The area where plaintiff suffered her inju-

ry was an extension of the playing field.[11] Therefore, we are of the opinion that the trial justice erred in granting judgment as a matter of law in Johnston's favor. The judgment with respect to Johnston is vacated.

### Ronald Rotondo d/b/a A Cut Above Landscaping Service

■ The plaintiff also argues that the trial justice erred by granting Rotondo's Rule 50 motion for judgment as a matter of law. The plaintiff contends that Rotondo, an agent of an undisclosed principal, may be liable for negligence, regardless of whether the principal is immune from liability. The plaintiff also argues that expert testimony was not required to establish a breach of the standard of care by virtue of overgrown grass in the vicinity of the drains because this is a matter of common knowledge and understanding by the average juror.

The trial justice granted Rotondo's motion for judgment as a matter of law and held that there was no evidence presented demonstrating Rotondo's negligence, nor was there any testimony about the standard of care that Rotondo owed to plaintiff. We agree.[12]

■ The plaintiff has not established that Rotondo failed in his lawn maintenance responsibilities nor that any failure by him was the proximate cause of plaintiff's injuries. In a negligence case, a plaintiff must "establish a standard of care as well as a deviation from that standard." *Sousa v. Chaset*, 519 A.2d 1132, 1135 (R.I. 1987) (quoting *Marshall v. Tomaselli*, 118 R.I. 190, 196, 372 A.2d 1280, 1283 (1977)).

Although plaintiff contends that a jury could use common sense and ordinary knowledge to find that Rotondo was negligent and argues that expert testimony is not always required in a negligence action, there must be evidence of a breach of a legal duty and evidence that the breach proximately caused plaintiff's harm. At trial, plaintiff failed to produce any evidence tending to show Rotondo's negligence. Without evidence of a specific act or omission by Rotondo that indicated a deviation from the proper standard of care, the plaintiff cannot prove negligence.

In *Morrocco v. Piccardi*, 713 A.2d 250, 253 (R.I.1998), this Court upheld a jury's verdict awarding a homeowner damages against a contractor for failure to properly grade the landscaping on the property so that water would drain away from the house. As a result of the defendant's failure to properly grade the area, plaintiff slipped and fell on accumulated ice, sustaining a serious injury. At trial, plaintiff presented a professional landscaper as an expert witness who testified that it was a deviation from the standard of care to pitch the landscaping toward a house. *Id.* at 252. Additionally, the plaintiff engaged a consulting engineer who testified that the property did not conform to customary and established local landscaping and construction standards. *Id.*

In his testimony, Rotondo indicated that he was hired by Johnston to cut the grass weekly during the summer and twice a week during the athletic season, when school was in session. Rotondo also testified that part of his job was to trim the grass around the drains; he acknowledged

---

**11.** We note, however, that if plaintiff had come to the Johnston soccer field to play a soccer game that was not organized or sanctioned by the school district, Johnston may have been immune under the recreational use statute.

**12.** The judgment as a matter of law in favor of Rotondo with respect to Johnston's third-party claim has not been appealed and is not before the Court.

that this grass may have grown faster than the grass on the rest of the field because of the abundance of water in the area. There was no evidence presented that he did not cut the grass in accordance with the terms of his contract.

The plaintiff cites a number of cases [13] to support her contention that expert testimony was not necessary to establish that the grass was overgrown near the drain. She contends that this is an area of common knowledge and understanding. According to plaintiff, the jury heard this evidence, had common knowledge about grass growth, and was presented with several photographs showing the grate covered with grass. This evidence, plaintiff alleges, was sufficient to allow a jury to determine "whether or not the amount of growth that had accumulated [on the date of the incident] was inconsistent with a properly trimmed drain area just two days earlier." However, there are fundamental differences between the cases cited by plaintiff and the issue with which the Court is confronted. Most of the cases that plaintiff relies on address the improper use of expert opinions, and none concerns the appropriate standard of care owed to an identifiable plaintiff—the central issue before this Court.

In *Boscia v. Sharples*, 860 A.2d 674 (R.I. 2004), we vacated a judgment because the trial justice erroneously excluded photographs of the vehicles involved in a collision. We held that expert testimony was not required to "introduce into evidence photographs of vehicles damaged in a collision to prove causation of passengers' injuries." *Id.* at 678. The decision in *Boscia* is clearly distinguishable from the case at hand. The question before us is whether a jury could have found Rotondo negligent simply from a photograph of the grass, in the absence of expert testimony about the applicable standard of care for maintaining an athletic field and its environs. We agree with the trial justice that a photograph of the grass around the drain was not enough. We are of the opinion that the judgment as a matter of law in favor of Rotondo as against plaintiff's allegation of negligence was proper.

## Conclusion

For the reasons stated herein, the judgment against the Central Falls School Dis-

**13.** *Gliottone v. Ethier*, 870 A.2d 1022, 1028 (R.I.2005) (holding that photographs considered in the light most favorable to plaintiff created a material issue of fact concerning whether the defendant may have been speeding at the time of the accident); *Boscia v. Sharples*, 860 A.2d 674, 678 (R.I.2004) (holding that photographs at issue in the trial were relevant as tending to prove that defendant's vehicle became wedged underneath plaintiff's vehicle thereby supporting plaintiff's theory of the case); *Zawatsky v. Cohen*, 463 A.2d 210, 212 (R.I.1983) ("'where circumstances can be fully and adequately described to a jury and are such that their bearing on the issue can be estimated by all men without specialized knowledge or training, opinion evidence is not admissible'"); *Barenbaum v. Richardson*, 114 R.I. 87, 90–92, 328 A.2d 731, 733–34 (1974) (holding there is no need for expert testimony where all the facts and circum-stances can accurately be described to the jury who is capable of comprehending and understanding them); *Cutroneo v. F.W. Woolworth Co.*, 112 R.I. 696, 699–700, 315 A.2d 56, 58–59 (1974) (expert testimony was not necessary to explain the slipperiness of a tile floor); *Cote v. Arrighi*, 91 R.I. 289, 292, 162 A.2d 797, 799 (1960) (holding jurors were permitted to conclude "on the basis of common knowledge and experience that the clothespin had been on the steps for some substantial period of time"); *Glennon v. Great Atlantic & Pacific Tea Co.*, 87 R.I. 454, 457, 143 A.2d 282, 284 (1958) (holding it was error to permit an architect to testify to the effect that a low wall outside the exit of defendant's store was hazardous); *Douglas v. First Nat. Stores, Inc.*, 54 R.I. 278, 280, 172 A. 723, 725 (1934) ("It is common knowledge that soda water when properly bottled is a harmless beverage in general use.").

trict is vacated, and we direct the entry of judgment in favor of the defendant, Central Falls School District. We vacate the judgment in favor of the Town of Johnston, and we remand the case for a new trial. The judgment in favor of the defendant, Ronald Rotondo d/b/a/ A Cut Above Landscaping Service, is affirmed. The papers in this case may be remanded to the Superior Court for further proceedings consistent with this opinion.

Justice FLAHERTY did not participate.