**Supreme Court**

No. 2013-280-Appeal.
(WC 12-486)

Kathleen Carlson              :

        v.                     :

Town of South Kingstown et al.    :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Kathleen Carlson              :

v.                    :

Town of South Kingstown et al.      :


Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

## O P I N I O N

**Justice Flaherty, for the Court.**  In this case, we are once again asked to revisit the scope and applicability of G.L. 1956 chapter 6 of title 32, the Recreational Use Statute (RUS). The plaintiff, Kathleen Carlson, appeals from summary judgment entered in Washington County Superior Court in favor of the defendant, the town of South Kingstown (the town).[1]  The plaintiff's claim sounded in negligence and concerned an injury she sustained at a town-owned park while she was a spectator at a little league baseball game.  This appeal came before the Supreme Court for argument on February 4, 2015, pursuant to an order directing the parties to show cause why the issues raised in the appeal should not be summarily decided.  After hearing argument and examining the memoranda filed by the parties, we conclude that cause has not been shown and we shall proceed to decide the appeal at this time.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

---

[1]  The plaintiff also named South Kingstown Little League, Inc. (the league) as a defendant in the suit, but this appeal concerns only the town of South Kingstown.  The Superior Court entered summary judgment in favor of the league while this appeal was pending, and plaintiff has appealed that judgment separately.

# I

## Facts and Travel

On July 28, 2010, plaintiff attended her son's little league baseball game at Tuckertown Park in the Wakefield section of South Kingstown. The game was a part of the schedule of South Kingstown Little League, Inc., and the park and field were owned and maintained by the town. Ms. Carlson would later testify by deposition that the game was the league's championship game, that the game was open to the general public, and that no tickets were required to attend. The league had a permit, issued by the town, to host this game, as it did for all its games, but the town charged no fee to use the park. The defendant, through the interrogatory responses and deposition testimony of Theresa Murphy, the town's Director of Leisure Services, said that this was in accordance with a written policy because the league was a nonprofit sports league within the town.

After the game had ended, plaintiff, who had been standing in the area of a set of batting cages located just off the first-base line of the park's lower field, walked towards the concession stand, where she planned to meet her son. Unfortunately, on her way there, plaintiff felt her ankle twist under her and she heard what she believed was the breaking of bones in her leg. Ms. Carlson testified that she never fell to the ground, but "when I took a step on my right leg, I felt my ankle fall into this little divot in the ground." As a consequence of her stumble into the "divot," plaintiff broke her right leg. A witness to the injury would later testify by deposition that this "divot" was a part of a "repetitive problem" caused by "kids waiting to get into the batting cage, [when] they dig their cleats into the ground." There is discrepancy in the record as to the size and shape of the hole that caused plaintiff's injury; plaintiff described the "divot" as "only under two inches but I don't really remember," while another witness said the hole was,

"6, 8 inches across, maybe a little wider than that, a good 8, 10 inches deep." Ms. Murphy testified that the most recent inspection of the field had been accomplished two days before the incident and that the town had received no notice of any hazardous condition existing at the park. The particular hole in question was filled in by defendant the day after the incident.

It was the town's regular policy to maintain the fields at Tuckertown Park on Mondays and Thursdays; no reports had been received about the area of plaintiff's accident. Asked whether the town was aware of holes near the batting cages being a common problem, Ms. Murphy stated, "I'm not sure it's a common problem, but I am aware that that type of thing can happen." However, she admitted that it was not uncommon "to find holes in ball fields after people have used them." Ms. Murphy testified that, if the town had been aware of any potential hazard, it would have had it repaired or fixed. The record is devoid of any similar incidents causing injuries at Tuckertown Park.

On August 6, 2012, plaintiff filed suit, alleging that defendant was "negligent in maintaining the premises of Tuckertown Field," resulting in plaintiff's injury. The plaintiff, in her interrogatory answers, said that her injury had resulted in several thousand dollars in medical bills.[2] Discovery in the suit proceeded; depositions were taken from officials of the town and the league, a witness to the incident, and plaintiff herself. Several months later, the town moved for summary judgment because it believed that the RUS, barred plaintiff's suit.[3] The plaintiff

---

[2] There seems to be no dispute about the extent of plaintiff's injury.

[3] The specific section of the statute cited by the town is G.L. 1956 § 32-6-3, which reads:

"Except as specifically recognized by or provided in § 32-6-5, an owner of land who either directly or indirectly invites or permits without charge any person to use that property for recreational purposes does not thereby:
    "(1) Extend any assurance that the premises are safe for any purpose;
    "(2) Confer upon that person the legal status of an invitee or licensee to whom a duty of care is owed; nor

objected to the motion, citing two exceptions to the RUS's limitation on liability, § 32-6-5(a).[4] Specifically, plaintiff claimed that defendant had willfully or maliciously failed to guard or warn against a dangerous condition on the land and that plaintiff had been charged for her access to the park. On May 20, 2013, the motion was argued and, in a bench ruling, a justice of the Superior Court granted summary judgment to defendant, saying, "[t]he Recreational Use Statute is still alive and well * * * there's no evidence here that the town was aware of this particular hole and/or the plaintiff was facing that peril before falling into that hole." The hearing justice went on to say of plaintiff's second argument, that either or both of the fees paid to the league and the taxes paid to the town constitute an admission fee, "[those] are not, quote, charges as contemplated under the Recreational Use Statute." The plaintiff filed a timely appeal, and, after a minor procedural remand, her case is properly before this Court.[5]

---

"(3) Assume responsibility for or incur liability for any injury to any person or property caused by an act of omission of that person."

In the preceding decade alone, we have visited this statute many times. See Pereira v. Fitzgerald, 21 A.3d 369, 373-74 (R.I. 2011); Berman v. Sitrin, 991 A.2d 1038, 1043-44 (R.I. 2010) (Berman I); Labedz v. State, 919 A.2d 415, 416 (R.I. 2007) (mem.); Smiler v. Napolitano, 911 A.2d 1035, 1041-42 (R.I. 2006); Cruz v. City of Providence, 908 A.2d 405, 406-07 (R.I. 2006); Lacey v. Reitsma, 899 A.2d 455, 457 (R.I. 2006); and Morales v. Town of Johnston, 895 A.2d 721, 729-32 (R.I. 2006).

[4] The provisions in § 32-6-5(a) are intended to limit the scope of the RUS's protection from liability, as follows:

"Nothing in this chapter limits in any way any liability which, but for this chapter, otherwise exists:
    "(1) For the willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity after discovering the user's peril; or
    "(2) For any injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof * * * ."

[5] A question was raised as to whether judgment had been properly entered and, therefore, whether the appeal was properly before this Court. On our order, the case was remanded to the Superior Court for formal entry of judgment in accordance with Rule 54(b) of the Superior Court Rules of Civil Procedure, which occurred on February 14, 2014. Following this, plaintiff's appeal was docketed with this Court.

**Standard of Review**

"[T]his Court reviews a grant of summary judgment <u>de novo</u>." <u>Allstate Insurance Co. v.</u> <u>Ahlquist</u>, 59 A.3d 95, 97 (R.I. 2013) (quoting <u>Moore v. Rhode Island Board of Governors for</u> <u>Higher Education</u>, 18 A.3d 541, 544 (R.I. 2011)). Our function is to review "the evidence in a light most favorable to the nonmoving party, and we will affirm the judgment if we conclude that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." <u>Berman v. Sitrin</u>, 991 A.2d 1038, 1043 (R.I. 2010) (<u>Berman I</u>) (quoting <u>Ouch v.</u> <u>Khea</u>, 963 A.2d 630, 632 (R.I. 2009)).[6] Although complaints alleging negligence are often fact-intensive and therefore often not well suited for summary judgment, the question of whether a defendant owes a duty to a plaintiff is a question of law that we review on a <u>de novo</u> basis. <u>Berard v. HCP, Inc.</u>, 64 A.3d 1215, 1218 (R.I. 2013) (citing <u>Ouch</u>, 963 A.2d at 633). In such a case, where a statute touches on the question of the existence of a duty, we apply the statute's clear language, relying on the legislative intent to clarify any ambiguities. <u>Berman I</u>, 991 A.2d at 1043 (citing <u>Kaya v. Partington</u>, 681 A.2d 256, 260 (R.I. 1996)).

**III**

**Discussion**

On appeal, plaintiff argues that it was error for the hearing justice to grant summary judgment in favor of defendant for three reasons. First, plaintiff argues that the RUS should not apply to the present action because she is not the type of user that the statute contemplates. Second, plaintiff argues that the exceptions in § 32-6-5(a)(1) should apply, because there is a

---

[6] We shall refer to <u>Berman v. Sitrin</u>, 991 A.2d 1038 (R.I. 2010), as "<u>Berman I</u>" to distinguish it from a more recent appeal stemming from the same facts, <u>Berman v. Sitrin</u>, 101 A.3d 1251, 1256-59 (R.I. 2014) (<u>Berman II</u>).

genuine issue of fact as to whether defendant was willful or malicious in its failure to guard or warn against the dangerous condition on the field. Lastly, plaintiff argues that the exception set forth in § 32-6-5(a)(2) applies, either because she had paid a fee to the league or taxes to the town and, as a result, she was charged to use the land. For the reasons set forth below, we see no merit in plaintiff's arguments, and it is our opinion that the result is precisely what the RUS and this Court's prior holdings dictate.

## A. The Recreational Use Statute's History

The RUS has had a lengthy and complex history with this Court. See supra, note 3. The RUS began as a statute promulgated in 1978 by the General Assembly for the "salutary purpose" of "encourag[ing] private landowners to make their land free and open to the public for recreational purposes." Berman I, 991 A.2d at 1043. This encouragement came in the form of a reduced duty of care; users of the land would be considered to be trespassers and the landowner need only "refrain from willful or wanton conduct." Id. at 1044. In 1996, the RUS was amended and "it is clear from the unambiguous language of the 1996 amendment that the legislature intended to include the state and municipalities among owners entitled to immunity under the statute." Pereira v. Fitzgerald, 21 A.3d 369, 373 (R.I. 2011) (quoting Hanley v. State, 837 A.2d 707, 712 (R.I. 2003)); Berman I, 991 A.2d at 1044 (noting that § 32-6-2(3) was amended by P.L. 1996, ch. 234, § 1). We have on a number of occasions cast a disapproving eye on this expansion of immunity, saying, "the state and its municipalities are presumptively better able to bear the burden of damages" than an injured plaintiff, and that "the statutory scheme does nothing to motivate governmental landowners to make their properties safe." Smiler v. Napolitano, 911 A.2d 1035, 1042 (R.I. 2006); see also Lacey v. Reitsma, 899 A.2d 455, 458 (R.I. 2006). Nonetheless, we have also been consistent in saying that this Court is not a

legislative body; we are bound to apply the statute in light of both its language and our jurisprudence. It is true that in Berman I, 991 A.2d at 1051, a duty was imposed on a municipality for injuries suffered by a plaintiff on land that was recreational in nature. However, in that case, the Court was constrained to address the significance of repeated catastrophic injuries of which the defendant municipality was clearly aware. Id.

## B. The RUS is Implicated by Plaintiff's Injury

The plaintiff relies on Morales v. Town of Johnston, 895 A.2d 721, 731 (R.I. 2006), for her argument that defendant owed a duty to her in this case because her use of Tuckertown Field was not the type of use the RUS was meant to cover. We do not agree. In Morales, 895 A.2d at 724, the plaintiff, a Central Falls High School athlete, was injured while she was playing in a soccer game at Johnston High School. Significantly, on the day Ms. Morales was injured, the field was being "utilized and maintained for school-sponsored athletics." Id. at 731. When reviewing cases in which the RUS may apply we examine "the nature and scope of the activities occurring on the land." Id. In order for the RUS to apply, "the premises [must] be available to the public for recreational purposes." Id. Unlike the open spectator areas at Tuckertown Park where plaintiff was injured, the field in Johnston, at least on that day, was "not open to the public for recreational activities when Morales was injured" because no one except those associated with either high school team was allowed in the area at that time. Id.

Rather, we are persuaded by the argument of defendant that Pereira, 21 A.3d at 375, is on all fours with this case. The facts in Pereira are strikingly similar to the facts here; the plaintiff was a spectator at her grandson's soccer game, a game that was played in a city-owned and-managed park, she paid no fee to enter, and she injured her ankle when she fell into a hole in the common area of that park. Id. at 370-71. In deciding Pereira, we held that Morales was

"inapposite" to and "clearly distinguishable" from the case of Ms. Pereira. Id. at 375. The same is true for Ms. Carlson. The area where plaintiff was injured, which was both away from the field of play and in an area where, plaintiff admits, "[T]here were people around the whole of the baseball field," was in space which the general public was free to access for recreational use. Therefore, it was not error for the hearing justice to apply the RUS to plaintiff's case.

### C. The § 32-6-5(a)(1) Exception to the RUS is Inapplicable

Alternatively, plaintiff argues that defendant engaged in willful or malicious conduct, mandating the application of an exception to the RUS. See § 32-6-5(a)(1). To support this argument, plaintiff relies on Berman I, 991 A.2d at 1051, where this Court held that the city of Newport "had an affirmative duty to take reasonable steps to warn and shield unsuspecting visitors" to the famed Cliff Walk. Citing that case as support, plaintiff correctly states in her brief that "the broad protections created for landowners under § 32-6-3 are not absolute." However, in deciding Berman I, 991 A.2d at 1052, we were of the opinion that, because of the unique situation, where there was a "strong likelihood that a visitor to the Cliff Walk would suffer serious injury or death," Newport owed a duty to users of the path. In that light, a factfinder could determine that the city intentionally or voluntarily failed to guard against future injuries and, consequently, the requirements of the § 32-6-5(a)(1) exception were met. Berman I, 991 A.2d at 1052.

But in the case currently before us, no such strong likelihood of injury was known to defendant. Ms. Murphy testified that she and her department had received no notice of the hole; otherwise, the record is silent about whether the town ever received notice of the area in which plaintiff was injured. Of the holes that caused plaintiff's injury, Ms. Murphy said, "I'm not sure it's a common problem," but conceded, "I am aware that that type of thing can happen," and

plaintiff's witness described similar holes as a "repetitive problem."  In our opinion, such evidence falls woefully short of establishing the existence of sufficient facts to show that the town knew of the particular hole that injured plaintiff or of similar persons injured by similar defects in the park.  The hearing justice correctly described the situation when she said, "[T]here's no evidence here that the town was aware of this particular hole," and defendant did not know that "plaintiff was facing that peril."  This is far short of the situation in Berman I, in which the defendant municipality was "saturated with the knowledge that some feature of [its] land presents a clear and present danger to completely innocent users * * * ."  Berman I, 991 A.2d at 1054 (Flaherty, J., concurring).  Therefore, we see no error in the hearing justice's refusal to apply the exceptions of § 32-6-5(a)(1) to plaintiff's claim.

### D. The § 32-6-5(a)(2) Exception Does Not Apply

Lastly, plaintiff advocates that the exception set forth in § 32-6-5(a)(2) should apply, because either: (1) she paid a fee to the league on her son's behalf so that he could participate, or (2) she paid taxes to the town which uses a part of its budget to maintain Tuckertown Park.  The exception in § 32-6-5(a)(2) says that no limitation of liability exists "[f]or any injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for the recreational use thereof * * * ."  The RUS defines a charge as "the admission price or fee asked in return for invitation or permission to enter or go upon the land."  Section 32-6-2(1).

With respect to this issue, we do not write on a clean slate because in the past we have addressed what the term "charge" means in the context of the RUS.  In Hanley, 837 A.2d at 714, an injured plaintiff argued that, because she paid a camping fee at a state park in Narragansett, she was charged for use of the land and therefore was able to sue the state for her injuries.  However, we concluded that, to qualify as a charge under § 32-6-5(a)(2) the fee must be

"imposed in return for recreational use of the land." Hanley, 837 A.2d at 714 (quoting Majeske v. Jekyll Island State Park Authority, 433 S.E.2d 304, 305-06 (Ga. Ct. App. 1993)).

When she was deposed, Ms. Carlson agreed that the game she went to see was open to the public and that it was not necessary to buy a ticket to get into the park to watch the game. The fee plaintiff paid to the league had no effect on her right to use the park or view the game; accordingly, such a fee is not a charge to use the land as the statute contemplates. It also follows that, despite any taxes plaintiff may have paid to the town, the payment or nonpayment of those taxes did not affect whether she could use the park for recreation, and therefore the taxes were not charges or fees to use the land. Indeed, plaintiff was not required to be a resident of South Kingstown to enter Tuckertown Park. We would note that applying this "taxpayer" argument would create a result inconsistent with common sense. This argument, applying the exception in § 32-6-5(a)(2) to this and similar cases, would eviscerate a municipality's RUS protection in every case where one of its own taxpayers was injured on its land, but not when a nonresident was injured. The same disparity would exist between injured Rhode Island residents and injured nonresidents where state-owned property was concerned. To interpret the statute in that way would be to imply that the General Assembly intended such a result, but that conclusion would be beyond absurd. When the hearing justice said, "It's undisputed that there is no fee charged for [plaintiff] to walk onto this field to observe her son playing," she correctly applied the RUS and made no error of law.

It is our firm opinion that when the hearing justice granted the defendant's motion for summary judgment, she properly applied the RUS. Although we are sympathetic to the plaintiff, who suffered great pain and monetary losses from her injuries, we are bound by the language of the statute and guided by our past interpretations of it. A different result is only possible by

revisiting the statute, a task, as we have said in the past, that is not for this Court, but for the General Assembly.

## IV

## Conclusion

For the reasons set forth above, we affirm the grant of summary judgment for the defendant.  The papers in the case may be returned to the Superior Court.



| | |
|---|---|
| **TITLE OF CASE:** | Kathleen Carlson v. Town of South Kingstown et al. |
| **CASE NO:** | No. 2013-280-Appeal.<br>(WC 12-486) |
| **COURT:** | Supreme Court |
| **DATE OPINION FILED:** | April 8, 2015 |
| **JUSTICES:** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **WRITTEN BY:** | Associate Justice Francis X. Flaherty |
| **SOURCE OF APPEAL:** | Washington County Superior Court |

**JUDGE FROM LOWER COURT**:

Associate Justice Kristin E. Rodgers

**ATTORNEYS ON APPEAL:**

For Plaintiff:  Ronald J. Resmini, Esq.

For Defendant:  Brian J. Clifford, Esq.