**Supreme Court**

No. 2014-318-Appeal.
(WC 12-486)
(Dissent begins on page 8)

Kathleen Carlson :

v. :

Town of South Kingstown et al. :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Supreme Court

No. 2014-318-Appeal.
(WC 12-486)
(Dissent begins on page 8)

Kathleen Carlson          :

v.          :

Town of South Kingstown et al.          :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** The plaintiff, Kathleen Carlson, appeals from a Superior Court judgment in favor of one of the defendants, South Kingstown Little League (league or defendant), in this negligence action. The plaintiff sustained an injury at a park owned by the Town of South Kingstown (town) while she was a spectator at a Little League baseball game organized by the defendant. This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Procedural History

This Court is familiar with the facts of this case as set forth in our previous decision in Carlson v. Town of South Kingstown, 111 A.3d 819 (R.I. 2015) (Carlson I).[1]  In summary, on July 28, 2010, plaintiff was at Tuckertown Field (the park) in the Wakefield section of South Kingstown watching her son play Little League baseball.  The game was scheduled and organized by defendant.  The park and field were owned and maintained by the town.  At the end of the game, plaintiff, who had been "watching the game against a fence between one of the dugouts and the batting cages," began to walk towards her son.  As she walked towards the concession stand, plaintiff "felt [her] ankle fall into this little divot in the ground."  As a result, plaintiff fractured her right leg in three different places.

Victor J. Beretta (Beretta), a fellow Little League parent and former assistant coach, did not witness the fall but observed the divot on the ground where plaintiff was injured.  During his deposition, he described the divot as roughly "6, 8 inches across, maybe a little wider than that" and "a good 8, 10 inches deep."  Beretta also testified at his deposition that the divots were a "repetitive problem" that was caused by players who would dig the toe and spikes of their baseball cleats into the ground while waiting for their turn to enter the batting cages.  He estimated that the location of this specific divot was "probably 10 or 15 feet from the right field fence" and "probably 5, 8 feet, maybe closer" to the "gate that leads into the first batting cage."  Although Beretta could not confirm if it was this same divot, he testified at his deposition that divots had been filled in in the past and that this specific divot looked as if it had been there for a while.

---

[1] In Carlson v. Town of South Kingstown, 111 A.3d 819 (R.I. 2015), this Court held that the Recreational Use Statute, G.L. 1956 chapter 6 of title 32, applied to bar plaintiff's personal injury claims against the town.

Theresa Murphy (Murphy), the Director of Leisure Services for the town, explained during her deposition that the town had three, three-person maintenance crews who maintained the town's seventeen parks. She explained that, with respect to Tuckertown Park, a three-person crew "provide[s] park maintenance twice a week." Among other tasks, the town mowed the grass, picked up litter, and checked for damage to park equipment and grounds. According to Frank J. Gallucci, the league's president, the town is also responsible for preparing the field for the game, which includes lining the field, grooming the infield, and placing the bases and home plate on the field. After being informed of the divot that allegedly caused plaintiff's injuries, the town filled in the divot the following day. Murphy further testified that there were no warnings posted at the park alerting the public to potential defects in the grounds, but she acknowledged that it was not uncommon to find divots in the field.

According to Murphy, the town does not charge the league to use the baseball field because it is a nonprofit youth sports league. Murphy also testified that the league is not instructed to remedy any defect observed while using the ball field. Gallucci, who at the time of the incident was on the league's board of directors, testified at his deposition that he had never observed the divots at the park. He also explained that there was no formal inspection process of the field conducted by the league; but he added that if the coaches saw "any issues that [they] want[ed] to question on the field," they would raise them. He further testified that, had he seen the divot "[he] would inform the [t]own[,]" but that the league was not responsible for maintaining the park.

In her complaint, plaintiff alleged that defendant was "negligent in maintaining the premises of Tuckertown Field * * *." As a result of defendant's negligence, plaintiff claims that she "sustained severe personal injuries that required medical treatment that is ongoing, as well as

lost wages and loss of earning capacity, anxiety, pain and suffering * * *." On July 7, 2014, the league moved for summary judgment, arguing that it had not owed a duty of care to maintain the park. The plaintiff objected to the motion, insisting that defendant had a duty to inspect the park prior to hosting a Little League game and to repair any defects that were discovered, or at a minimum to warn of known dangerous conditions. The league's motion was argued and granted on August 18, 2014. The hearing justice reasoned that "[t]here's no ownership interest that the league has in the property itself, both of the athletic field itself as well as the surrounding areas." The hearing justice further explained that "to impose a duty to maintain and repair somebody else's property * * * [is] something that the [L]egislature should make a determination of, not t[he] [c]ourt." The plaintiff filed a timely notice of appeal.

## II

### Standard of Review

"This Court will review the grant of a motion for summary judgment de novo, 'employing the same standards and rules used by the hearing justice.'" Daniels v. Fluette, 64 A.3d 302, 304 (R.I. 2013) (quoting Great American E & S Insurance Co. v. End Zone Pub & Grill of Narragansett, Inc., 45 A.3d 571, 574 (R.I. 2012)). "We will affirm a lower court's decision only if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law." Id. (quoting Great American E & S Insurance Co., 45 A.3d at 574). "[S]ummary judgment should enter 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case * * *.'" Lavoie v. North East Knitting, Inc., 918 A.2d 225, 228 (R.I. 2007) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)). "Although complaints alleging negligence are often fact-intensive and therefore often not well suited for summary judgment, the question of whether a

- 4 -

defendant owes a duty to a plaintiff is a question of law that [the Court] review[s] on a de novo

basis." Carlson I, 111 A.3d at 822.

### III

### Discussion

On appeal, plaintiff argues that the hearing justice erred in granting defendant's motion

for summary judgment because there were genuine issues of material fact as to whether

defendant owed a duty of care to plaintiff based on the information disclosed during discovery.

Specifically, plaintiff argues that there are questions of fact as to:

> "whether * * * the hole pre-existed before the game, whether it
> was or should have been known by the various coaches in the
> [league], when were the holes created near the batting cage,
> [whether] they [were] ignored, whether * * * the defect amounted
> to a warranted reckless conduct and whether * * * it was merely
> simple negligence * * *."

In response, defendant asserts that it did not owe a duty of care to plaintiff, given that the town—

and not the league—maintains the park where the injury occurred.

"It is well settled that to prevail on a claim of negligence a plaintiff must establish a

legally cognizable duty owed by a defendant to a plaintiff, a breach of that duty, proximate

causation between the conduct and the resulting injury, and the actual loss or damage."

Nationwide Property & Casualty Insurance Co. v. D.F. Pepper Construction, Inc., 59 A.3d 106,

110 (R.I. 2013) (quoting Habershaw v. Michaels Stores, Inc., 42 A.3d 1273, 1276 (R.I. 2012)).

"Although we have frowned upon the disposition of negligence claims by summary judgment,

the existence of a duty is nonetheless a question of law." Wyso v. Full Moon Tide, LLC, 78 A.3d

747, 750 (R.I. 2013). "In the absence of such a duty, 'the trier of fact has nothing to consider

and a motion for summary judgment must be granted.'" Id. (quoting Holley v. Argonaut

Holdings, Inc., 968 A.2d 271, 274 (R.I. 2009)). "The existence of a duty of care is a legal

question reserved for the trial justice, not for the jury." Id. "Only when a party properly overcomes the duty hurdle in a negligence action is he or she entitled to a factual determination on each of the remaining elements: breach, causation, and damages." Ouch v. Khea, 963 A.2d 630, 633 (R.I. 2009).

Generally, this Court uses "an ad hoc approach that turns on the particular facts and circumstances of a given case" to determine whether a duty exists. Woodruff v. Gitlow, 91 A.3d 805, 814 (R.I. 2014) (quoting Ouch, 963 A.2d at 633). Under this approach, the Court will "consider 'all relevant factors, including the relationship of the parties, the scope and burden of the obligation to be imposed upon the defendant, public policy considerations, and notions of fairness.'" Id. (quoting Gushlaw v. Milner, 42 A.3d 1245, 1252 (R.I. 2012)); see also Banks v. Bowen's Landing Corp., 522 A.2d 1222, 1225 (R.I. 1987). Because the duty of a property owner is based "firmly on the landowner's possession of the premises and his or her attendant right and obligation to control the premises[,]" Wyso, 78 A.3d at 751, this Court has declined to find a duty where an injury occurred on property not owned by the defendant. See Ferreira v. Strack, 636 A.2d 682, 684-86 (R.I. 1994) (the plaintiffs injured while crossing public street adjacent to church where they had just attended services); see also Maguire v. City of Providence, 105 A.3d 92, 93-94 (R.I. 2014) (the plaintiff injured while walking on sidewalk outside mall); Wyso, 78 A.3d at 749 (the plaintiff injured while walking along public sidewalk that abutted the defendant's business). Additionally, this Court has declined to find a duty where—although the property was indeed owned by the defendant—the defendant did not exercise any control over the property. See Berman v. Sitrin, 991 A.2d 1038, 1048 (R.I. 2010) (finding no duty on the part of the defendant, owner of property over which public easement runs, for injuries to user of easement where the defendant had no control over easement).

Turning to the particular facts in this case, we are satisfied that the plaintiff has failed to overcome the duty hurdle in her negligence action against the defendant because the defendant does not own, operate, or have control over the park where the plaintiff's alleged injury occurred. See Berman, 991 A.2d at 1048. Instead, it is the town that owns, operates, maintains, and has exclusive control over the park. The town's employees—not the league's—inspect the park regularly and conduct any repairs necessary to the park. As such, it was the town—and not the league—that repaired the divot that allegedly caused the plaintiff's injuries.[2] Additionally, it is the town that is responsible for preparing the field before the baseball game. There is no evidence that the town ever required the league to do any work to the park or on the field. Importantly, although the defendant had exclusive use of the playing field during the baseball game, the injury occurred outside of the playing field after the game had ended in an area adjacent to the batting cages. This area was open to the general public, and there is no evidence indicating that the defendant exercised any control over such area. There is also no evidence that the defendant could exclude or limit access to this area. Additionally, the players would not be present in this area during the game. There is uncontroverted evidence before this Court that the town is responsible for maintenance of the park. In the context of this case, therefore, we are of the opinion that the league did not owe a duty of care to the plaintiff.

## IV

### Conclusion

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be returned to the Superior Court.

---

[2] This subsequent remedial measure undertaken by the town emphasizes that the town had control over the park and the responsibility for remedying any defects thereto.

**Robinson, J., dissenting.** The Court's opinion is well-written and reflects careful research into the law of torts. However, it fails to convince me that summary judgment was correctly granted, and I feel obliged to respectfully dissent.

In the second paragraph of the "Facts and Procedural History" section of the majority's opinion, one reads the following:

> "Victor J. Beretta, a fellow Little League parent and former assistant coach, did not witness the fall but observed the divot on the ground where plaintiff was injured. During his deposition, he described the divot as roughly '6, 8 inches across, maybe a little wider than that' and 'a good 8, 10 inches deep.' Beretta also testified at his deposition that the divots were a 'repetitive problem' that were caused by players who would dig the toe and spikes of their baseball cleats into the ground while waiting for their turn to enter the batting cages."

In my view, the fact that "the divots were a 'repetitive problem'" and that they "were caused by players who would dig the toe and spikes of their baseball cleats into the ground" takes this case out of the ambit of the several cases cited by the majority holding that there is no duty "where an injury occurred on property not owned by the defendant." What radically differentiates this case from the cases cited by the majority is the fact that the Little League players "caused" the divots to come into existence—and indeed have acted in that matter so often that a witness (described by the majority as "a fellow Little League parent and former assistant coach") characterized it as a "repetitive problem." That being the case, it is clear to me that the Little League is no ordinary user of property owned by another. The plain blunt fact is that Tuckertown Field was changed and made more hazardous by the deliberate activities of the players "who would dig the toe and spikes of their baseball cleats into the ground while waiting for their turn to enter the batting cages." Accordingly, considering all the relevant factors and, particularly, the principle of fairness, it is my opinion that the Little League did owe a duty of care to the plaintiff, who was a

- 8 -

parent at the field to watch her son play Little League baseball when she was injured. See Woodruff v. Gitlow, 91 A.3d 805, 814 (R.I. 2014).[1] In my judgment, the Little League had a duty to warn spectators of the presence of the divots repeatedly caused by the activities of the players as they prepared to enter the batting cages. Needless to say, if the summary judgment had been vacated (as I believe it should have been), the plaintiff would still have had to grapple with issues of breach and causation, not to mention credibility. I would not venture to hypothesize as to which party would prevail at a trial. I only know that the plaintiff's quest for recovery should not have been cut off short of a trial. Therefore, I respectfully record my dissent.

---

[1] As the majority notes, in this Court's opinion in Woodruff v. Gitlow, 91 A.3d 805, 814 (R.I. 2014), we stated that, when determining whether a duty exists, the Court will consider "all relevant factors, including the relationship of the parties, the scope and burden of the obligation to be imposed upon the defendant, public policy considerations, and notions of fairness." (Internal quotation marks omitted.)



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:**          Kathleen Carlson v. Town of South Kingstown et al.

**CASE NO:**          No. 2014-318-Appeal.
(WC 12-486)

**COURT:**          Supreme Court

**DATE OPINION FILED:**   February 5, 2016

**JUSTICES:**          Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:**          Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**   Washington County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Kristin E. Rodgers

**ATTORNEYS ON APPEAL:**

For Plaintiff:   Ronald J. Resmini, Esq.

For Defendants:  Erik J. Tomberg, Esq.
Brian J. Clifford, Esq.